**CABINET FOR WORKFORCE DEVELOPMENT/Kentucky Department for Adult and Technical Education/Kentucky Tech Southeast Region/Hazard Vocational Technical School, Appellants.**

v.

**Lee Kyle CUMMINS; William O. Windchy, Acting Director of Special Fund, Now Robert E. Spurling, Director; Sheila C. Lowther, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

**No. 96–SC–900–WC.**

Supreme Court of Kentucky.

Sept. 4, 1997.

Carole Meller Pearlman, Williams & Wagoner, Louisville, for Appellant.

Robert J. Greene, Kelsey E. Friend Law Firm, Pikeville, for Appellee Cummins.

Judith K. Bartholomew, Labor Cabinet, Special Fund, Louisville, for Appellee Windchy, etc.

OPINION OF THE COURT

Claimant, whose date of birth is September 16, 1946, has a Master's degree in vocational education. From 1979 until 1993, he was employed as a teacher of refrigeration, air conditioning, and heating at an adult vocational school. Prior to that time, he had

worked for various employers and also was self-employed repairing commercial refrigeration, heating, and air conditioning systems. Claimant's date of last exposure was January 20, 1993.

Claimant was awarded benefits for permanent, total occupational disability for physical and psychiatric injuries resulting from his exposure to various chemicals in the course of his work. Based on medical evidence that the injuries resulted from the cumulative effect of his 26 years' exposure with multiple employers, the award was apportioned 25% to the employer and 75% to the Special Fund.

This appeal stems from claimant's assertion that the employer's violation of KRS 338.031, part of the Kentucky Occupational Safety and Health Act (KOSHA), contributed to his injuries and that, in addition to his award of income benefits, he was entitled to a 15% penalty pursuant to KRS 342.165. Claimant argued that KRS 338.031 required the employer to furnish a safe workplace and that there was uncontradicted medical evidence that proper ventilation was necessary in order for his workplace to be safe. Since proper ventilation was not provided, the employer had violated KRS 338.031. Claimant argued that the employer intent required by KRS 342.165 could be implied by a presumption that the employer was aware of KRS 338.031 since it was enacted in 1972.

The Administrative Law Judge (ALJ) noted that the penalty authorized by KRS 342.165 applied only where the compensable condition resulted from the intentional failure of the employer to comply with a specific safety statute or regulation. Since claimant had argued that there should have been a ventilation system present in the classroom but had failed to cite a specific statute or regulation which required a ventilation system, the penalty was denied. After claimant's petition for reconsideration was overruled, he appealed.

The Workers' Compensation Board (Board) affirmed the decision of the ALJ, stating its belief that the legislature did not envision the assessment of a penalty for the violation of a general standard of failing to furnish a safe place to work. See *Barmet of*

*Kentucky, Inc. v. Sallee,* Ky., 605 S.W.2d 29, 31 (1980). This did not mean that a violation of KRS 338.031 would never be sufficient to invoke the penalty provision, but the Board did not find the present situation to be one in which there was an obvious and egregious violation of basic safety concepts such as would overcome the general language of KRS 338.031. Since the ALJ's determination that the employer did not intentionally fail to comply with a specific statute or regulation was supported by substantial evidence, the Board concluded that it must be affirmed.

Relying upon the then-recent decision in *Apex Mining v. Blankenship,* Ky., 918 S.W.2d 225 (1996), the Court of Appeals reversed the Board in a two-to-one decision. The majority believed that since claimant had established that there was no ventilation and that he was not provided with safety equipment, the employer had, at a minimum, violated KRS 338.031. Therefore, the claim was remanded for further proceedings which included fact finding concerning the employer's knowledge or reasonable lack of knowledge.

In a dissenting opinion, Judge Dyche concluded that even if *Blankenship* would permit the imposition of a safety penalty for a violation of KRS 338.031, the evidence did not compel a finding that there was any intentional violation in this case. Therefore, he believed that the Board should have been affirmed.

At the time of claimant's last exposure to toxic chemicals, KRS 342.165 provided, in pertinent part, as follows:

If an accident is caused in any degree by the intentional failure of the employer to comply with any specific statute or lawful regulation made thereunder, communicated to such employer and relative to installation or maintenance of safety appliances or methods, the compensation for which the employer would otherwise have been liable under this chapter shall be increased fifteen percent in the amount of each payment.

KRS 338.031 provided, in pertinent part:

(1) Each employer:

(a) Shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;

(b) Shall comply with occupational safety and health standards promulgated under this chapter.

In *Blankenship*, the ALJ had determined that the employer provided the injured worker with "a defective grader, the throttle of which was tied wide open with an 'O' ring. Additionally, it had defective brakes, the decelerator pedal was not in proper condition, and the equipment could only be stopped by lowering the grader blade." 918 S.W.2d at 227. The ALJ also determined that the employer knew of the defective condition and had failed to repair it and that the defective condition of the machine caused the accident. *Id.* Since the danger presented by operating a piece of heavy equipment with these particular defects was patently obvious, the ALJ determined that the conditions of KRS 342.165 had been satisfied regardless of the absence of a statute or regulation specifically prohibiting the operation of a grader in that condition. Therefore, the question on appeal was whether there was substantial evidence to support the ALJ's finding.

We noted that the purpose of KRS 342.165 was to promote workplace safety by encouraging workers and employers to abide by safety rules and regulations. In addressing the employer's argument that KRS 338.031 was not a specific safety statute for the purposes of imposing a penalty pursuant to KRS 342.165, we stated as follows:

We acknowledge that the term "recognized hazards," as used in KRS 338.031 could be construed broadly to include hazards which were recognized by safety experts but which might not be apparent to workers or employers. However, we observe that this case does not concern a safety hazard of which this employer could reasonably have been unaware, but one that was obvious. There was substantial evidence that the employer was aware of the defective condition of the grader, and it is apparent, even to the lay person, that a piece of heavy equipment without brakes, with a decelerator that is not in proper condition, and with a throttle which is fastened in the wide open position creates a safety hazard. In fact, the Board referred to evidence that other operators had been forced to crash the defective machine into other equipment in order to stop it.

Although we recognize that KRS 338.031 is not as specific a statute as might be desirable, we also are mindful that the Workers' Compensation Act is social legislation which is to be construed liberally and in a manner consistent with accomplishing the legislative purpose. Therefore, we conclude that the particular violation of KRS 338.031(1)(a) which is presented by the facts of this case sufficiently complied with the requirements of KRS 342.165 to justify the imposition of a penalty. We believe that any other construction of KRS 342.165 on these facts would cause an absurd result which clearly would be at odds with the legislature's intent in enacting the provision.

918 S.W.2d at 228–29. The decision in *Blankenship* clearly was based on the egregious nature of the particular violation of KRS 338.031(1)(a) which had occurred. Nowhere did we state or imply that every violation of KRS 338.031(1)(a) constituted the violation of a specific safety statute for the purposes of KRS 342.165. What we did determine was that where a worker was required to operate a piece of grossly defective equipment, the condition of which created a safety hazard which was patently obvious, even to a lay person, which had caused prior accidents, and which was known to the employer for some time but was not corrected, it was not necessary for a statute or regulation to specifically prohibit the equipment from being operated in that condition. KRS 338.031(1)(a) would suffice.

■ In the instant case, claimant testified that the shop in which he worked was the size of a three or four car garage and that it had a garage-type door as well as two regular doors, all of which were often kept open. He testified that the shop was unsafe because it did not have a ventilation system or monitors. When asked whether a ventilation

system or monitors were required, he replied only, "I'm sure that they are."

Claimant's wife testified that he had told his principal and others that ventilation was needed in the shop. She submitted a signed, notarized, statement by Rudell Stamper, a retired instructor at the school, which indicated that claimant worked "with various Freons, Acids for cleaning, Oils and Lubricants, Bonding Compounds, Brazing and Soldering Materials, and Brazing and Soldering Fluxes." The statement indicated that the shop did not have a ventilation system and also indicated that "as safety coordinator the conditions of Mr. Cummins shop was reported every six months." However, Mr. Stamper was not deposed, and no safety report indicating what those conditions were or their significance was introduced into evidence.

Dr. Lockey relied upon claimant's description of his entire exposure to solvents over the years and concluded that his problems resulted from the cumulative effect of his exposures. Claimant had indicated that he used solvents and other chemicals throughout his career and that in none of his employment had he used a respirator or protective gloves. Dr. Lockey testified that, when working with solvents, proper ventilation and the use of gloves and respirators were in order. However, he did not measure the level of solvents present in claimant's work environment or indicate what type of ventilation was appropriate for that particular environment. Dr. Lockey did testify that claimant reported sometimes feeling inebriated at the end of a day's work in the shop, a condition which could be a symptom of overexposure to solvents. However, there was no evidence that, while he was employed, claimant was aware of the significance of the symptom, associated it with his work, or reported it to the employer or to Mr. Stamper. Dr. Ruth also testified for the claimant and stated that there was not enough information to differentiate the effects of one solution to which claimant was exposed over another or the weight of each type of exposure.

■ The burden was on the claimant to prove that the employer's intentional viola-

tion of a specific safety statute or regulation contributed to his injury. In this case, unlike *Blankenship,* claimant had failed to satisfy the requirements of KRS 342.165. Hence claimant's burden on appeal to the Board was to demonstrate that the evidence compelled a decision in his favor. Claimant cited no statute or regulation which requires mechanical ventilation or the use of protective gloves or a respirator when working with solvents. Having reviewed the evidence presented, we are not persuaded that the employer's failure to provide this equipment indicated such a gross disregard of patently obvious, basic safety concepts as occurred in *Blankenship.* Therefore, we are not persuaded that there was an adequate basis to overcome the requirement of KRS 342.165 that a specific safety statute or regulation must have been violated. Since no specific statute or regulation concerning the safe use of solvents was cited to the ALJ, it could not be said that the evidence compelled the imposition of a penalty on these facts. Therefore, we are not persuaded that the Board committed a flagrant error in assessing the evidence. Likewise, we are not persuaded that the Board overlooked or misconstrued a controlling statute or precedent in affirming the decision of the ALJ.

Accordingly, the decision of the Court of Appeals is reversed, and the decisions of the Board and the ALJ are reinstated.

All concur.