LEXINGTON–FAYETTE URBAN
COUNTY GOVERNMENT,
Appellant,

v.

Karen D. OFFUTT; James L. Kerr, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 1998–CA–001430–WC.

Court of Appeals of Kentucky.

Feb. 4, 2000.

Robert L. Swisher, Lexington, for Appellant.

Sarah Charles Wright, Lexington, KY, for Appellee.

BEFORE: BARBER, HUDDLESTON and JOHNSON, Judges.

*OPINION*

JOHNSON, Judge.

The Lexington–Fayette Urban County Government (LFUCG) appeals from the decision of the Workers' Compensation Board affirming the decision of the Administrative Law Judge which imposed a 15% enhancement [1] of the workers' compensation benefit received by Karen Offutt for injuries received while in training to become a LFUCG police officer. Since the decision of the Administrative Law Judge was supported by substantial evidence, we affirm.

Offutt, who had previously worked as a safety officer with the LFUCG from 1987 through June 1995, was a member of a new recruit class to become a police officer with the LFUCG. Prior to her acceptance into the class, Offutt had been required to meet certain levels of fitness and conditioning; and as a new recruit, Offutt was required to complete a training course. On July 11, 1996, during the second day of the recruit training, Offutt sustained a heat stroke after participating in a two-mile running exercise directed by the LFUCG police. Offutt suffered a permanent brain injury and numerous neurological impairments as a result of the heat stroke.

---

1. Kentucky Revised Statutes (KRS) 342.165.

As a result of her injuries, Offutt filed a claim for workers' compensation benefits including enhanced benefits pursuant to KRS 342.165 on the basis of an alleged safety violation. She alleged that the LFUCG intentionally violated its general statutory duty to furnish its employees a place of employment free from recognized hazards that were causing or likely to cause death or serious physical harm. Offutt settled her claim for workers' compensation benefits with the LFUCG, with the exception of the alleged safety violation and benefit enhancement issue. That issue was submitted to an ALJ, who found that the LFUCG had violated the general duty clause of KRS 338.031, and accordingly awarded Offutt an enhancement of her award of 15% under KRS 342.165. The Board affirmed the ALJ's decision, and this appeal followed.

▮▮▮▮ The LFUCG argues that the ALJ's findings, which were affirmed by the Board, that it violated the general duty clause of KRS 338.031 are not supported by substantial evidence. The function of this Court in reviewing a decision by the Board is to "correct the Board only where the the [sic] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice."[2]

There is no dispute that the controlling statutes are KRS 338.031, and KRS 342.165. KRS 338.031 is commonly referred to as the general duty clause and provides:

(1)Each employer:

(a) Shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;

(b) Shall comply with occupational safety and health standards promulgated under this chapter.

(2) Each employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this chapter which are applicable to his own actions and conduct.

KRS 342.165 provides for an enhanced penalty in certain situations and provides in relevant part:

(1) If an accident is caused in any degree by the intentional failure of the employer to comply with any specific statute or lawful administrative regulation made thereunder, communicated to the employer and relative to installation or maintenance of safety appliances or methods, the compensation for which the employer would otherwise have been liable under this chapter shall be increased fifteen percent (15%)in the amount of each payment.

The ALJ found that the LFUCG violated the general duty clause of KRS 338.031 and that it intentionally failed to comply with a specific statute. Thereby, under KRS 342.165 the LFUCG was subject to a 15% enhancement of the benefit owed to Offutt. The ALJ relied on *Nelson Tree Services, Inc. v. Occupational Safety and Health Review Commission,* 60 F.3d 1207 (6th Cir.1995), as persuasive authority to determine whether there had been a violation of KRS 338.031. *Nelson Tree* set forth the required elements to establish a violation of a similar federal general duty clause as: "(1) [a] condition or activity in the workplace presented a hazard to employees; (2)[t]he cited employer or employer's industry recognized the hazard; (3)[t]he hazard was likely to cause death or serious physical harm; and (4)[a] feasible means existed to eliminate or materially reduce the hazard."[3] The LFUCG claims that there is not substantial evidence of

**2.** *Western Baptist Hospital v. Kelly,* Ky., 827 S.W.2d 685, 687–88 (1992).

**3.** *Nelson Tree* at 1209.

record to support the ALJ's findings that each of these four elements was met. We disagree.

The first part of the test was met in that the running exercise in the heat conditions that existed was a hazard that directly caused serious physical injury to Offutt. There is sufficient evidence in the record in the form of weather reports, safety guides and medical testimony to support the finding that this hazard existed.

Substantial evidence of the second element existed because the testimony of each of the LFUCG training officers revealed that they were aware that high heat creates a potential for hazard to individuals engaged in physical activities. The LFUCG also recognized the hazard by having published a newsletter, specifically for its supervisors, such as the officers in charge of Offutt's training, that included an article entitled "Overexposure To Heat is a Summer Threat." This article explained what heat exhaustion and heat stroke is, how to prevent it, how to identify it, and how to treat it. This newsletter was published in July 1995, and was received by the officers in charge before Offutt's injury. The LFUCG also recognized the hazard by having trained the officers in charge on the dangers of exercising in heat and that those dangers vary according to the mixture of heat and humidity.

The LFUCG argues that the third prong of the *Nelson Tree* test was not met because the hazard on that day was not found to be "likely" to cause an injury. However, the language of KRS 338.031 requires the workplace to be free from a hazard that is "causing or [is] likely to cause" death or serious physical harm. There is substantial evidence that this hazard did in fact cause Offutt's injury.

There was also substantial evidence to support the findings that part four of the test, that "a feasible means existed to elim-inate or materially reduce the hazard", was also met. While the LFUCG argues that water was provided, in some form and availability [4], there was evidence that other means were available to the officers in charge to reduce the hazard, which included not requiring the recruits to exercise to the extent that they did at that particular time and at that temperature. The training materials and information available to the officers in charge made them aware of the danger, but they chose instead to conduct this running exercise under the rationale that police must be able to function in all conditions.

In *Apex Mining v. Blankenship*, Ky., 918 S.W.2d 225 (1996), the Supreme Court held that substantial evidence had been presented to support an inference that the employer had intentionally violated KRS 338.031 when he provided the employee with a road grader that contained throttle, decelerator and brake defects. As in *Apex Mining*, where the employer was aware of the defective condition of the grader, there was substantial evidence in the case *sub judice* that the police officers in charge of the training were aware of the dangers of exercising in extreme heat. They had been trained on these matters and had received information on them. The July 1995 issue of the LFUCG newsletter specifically "for LFUCG supervisors", addressed the issue of exercising or working in the heat, warned against it and described safety precautions to be taken in order to avoid serious injury. Furthermore, just as the defects of the grader in *Apex Mining* were obvious to a lay person, we believe that in the case *sub judice* the dangers of the heat were also obvious to a lay person, much less to officers who had been trained on such matters.

The LFUCG also argues that there was insufficient evidence of intent. In *Apex Mining*, the Court stated that "[u]nder

---

**4.** There was evidence that the officers in charge told the recruits to bring their own water to the exercise, and that when Offutt began to experience symptoms, the officers obtained water from other recruits for Offutt's use.

those circumstances, we agree that substantial evidence supported the ALJ's inference that the employer's violation of KRS 338.031 was intentional," and that "[t]his finding satisfies the requirement of KRS 342.165 that the work-related accident be caused 'in any degree' by the employer's safety violation."[5] From the previous discussion, we believe it was shown that the LFUCG intentionally violated KRS 338.031.

The LFUCG further argues that the Supreme Court in *Cabinet for Workforce Development v. Cummins*, Ky., 950 S.W.2d 834 (1997), restricted its holding in *Apex Mining* by stating:

> The decision in [*Apex Mining v.*] *Blankenship* clearly was based on the egregious nature of the particular violation of KRS 338.031(1)(a) which had occurred. Nowhere did we state or imply that every violation of KRS 338.031(1)(a) constituted the violation of a specific safety statute for the purposes of KRS 342.165. What we did determine was that where a worker was required to operate a piece of grossly defective equipment, the condition of which created a safety hazard which was patently obvious, even to a lay person, which had caused prior accidents, and which was known to the employer for some time but was not corrected, it was not necessary for a statute or regulation to specifically prohibit the equipment from being operated in that condition. KRS 338.031(1)(a) would suffice.[6]

*Cummins* was a case in which the employee claimed that the shop in which he worked was unsafe because it did not have a ventilation system or monitors. In *Cummins*, there was no evidence as to what the actual conditions at the shop were, or their significance. Nor was there evidence as to what type of ventilation was appropriate for that particular environment. The Court in *Cummins* went on to distinguish the facts in that case from those in *Apex Mining*, by stating that *Apex Mining* involved a "gross disregard of patently obvious, basic safety concepts."[7] In the case *sub judice*, there was evidence as to the actual conditions on the day of Offutt's injury being at an extremely hot temperature. There was also evidence that the excessive heat was inappropriate for the exercising that occurred. Thus, we believe the case *sub judice* is distinguishable from *Cummins*.

Accordingly, having found substantial evidence in support of the ALJ's findings, we affirm the decision of the Workers' Compensation Board.

ALL CONCUR.

---

**5.** *Apex Mining* at 228.

**6.** *Cummins* at 836.

**7.** *Cummins* at 837.