Robert A. BRUSMAN, Executor of the Estate of Donna Sue Brusman, Deceased; Robert A. Brusman, Individually and Next Friend of Gregory Brusman, A Minor, Christopher Brusman, A Minor, and Michael Brusman, A Minor, Appellants,

v.

NEWPORT STEEL CORPORATION; Sheila C. Lowther, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 1999–SC–0430–WC.

Supreme Court of Kentucky.

May 18, 2000.

Ronald L. McDermott, Covington, Counsel for Appellants.

Kenneth Lance Lucas, Florence, Counsel for Appellee Newport Steel Corporation.

COOPER, Justice.

On February 28, 1997, Donna Sue Brusman was fatally injured in the course and scope of her employment with Appellee Newport Steel Corporation. She was survived by her husband, Appellant Robert A. Brusman, and their three minor children. Although Donna and Robert Brusman were still married, they had been separated for over two years. A divorce action had been filed and was pending at the time of Donna's death. Robert and the three children filed workers' compensation claims for death benefits under KRS 342.750. They also claimed entitlement to a 15% penalty pursuant to KRS 342.165. Newport Steel did not contest the children's rights to benefits, but did contest both Robert's rights to widower's benefits and the penalty claim. The Administrative Law Judge ("ALJ") awarded the children both death benefits and a 15% penalty; but, relying on KRS 342.075, denied Robert's claim for widower's benefits on grounds that he was neither actually nor presumptively dependent upon Donna at the time of her death. The Workers' Compensation Board affirmed as to the 15% penalty, but reversed the denial of Robert's claim, holding that a widower is entitled to benefits under KRS 342.750(1)(a) or (b) regardless of dependency. The Court of Appeals reversed the Board on both issues. We now reverse the Court of Appeals, reinstate the order of the Board, and remand to the ALJ for a new, recalculated award.

## I. DEATH BENEFITS.

Currently, death benefits are awarded under KRS 342.750 if the worker's death resulted from a work-related injury or occupational disease;[1] and under KRS 342.730(3) if the deceased worker was drawing or was entitled to benefits because of a work-related injury or disease at the time of his/her death, but died from another cause.

From the date of its initial enactment in 1916[2] until its first major revision in 1972,[3] the Kentucky Workers' Compensation Act had only one provision for paying benefits to survivors of a deceased worker. KS 4893,[4] recompiled in the 1942 Kentucky Revised Statutes as KRS 342.070, provided benefits only if the worker's death resulted from a compensable injury or occupational disease and if the claimant was *actually dependent* upon the deceased worker at the time of his death, as follows:

(a) If the claimant was *wholly dependent* upon the deceased worker, a sum equal to 66⅔% of the deceased worker's average weekly earnings; and

(b) If the claimant was *partly dependent* upon the deceased worker, a sum equal to 66⅔% of the deceased worker's average weekly earnings times a percentage representing the degree of partial dependency.[5]

The 1916 Act also included a provision for determining dependency. KS 4894,[6] which was recompiled in 1942 as KRS 342.075, created a presumption that certain persons were *wholly dependent* upon the deceased worker. As of 1972, those entitled to the presumption were:

(a) A wife upon a husband whom she had not voluntarily abandoned at the time

---

1. Although KRS 342.750 does not specifically state that its provisions apply to a death resulting from a compensable occupational disease, application of the statute in that circumstance is provided for by KRS 342.316(4).

2. 1916 Ky. Acts ch. 33.

3. 1972 Ky. Acts ch. 78, eff. January 1, 1973.

4. 1916 Ky. Acts ch. 33 § 12.

5. Both sums were subject to a minimum limitation of 25% of 85% of the state average weekly wage.

6. 1916 Ky. Acts ch. 33 § 13.

of the accident or who having been abandoned by her husband has not engaged in such conduct since his abandonment as would at common law constitute grounds justifying the abandonment of such wife by her husband;

(b) A husband incapacitated from wage-earning, upon a wife whom he has not voluntarily abandoned at the time of the accident; and

(c) A child or children under the age of sixteen years, or over sixteen years if incapacitated from wage-earning, upon a parent with whom such child or children were living, or by whom actually supported at the time of the accident or from whom support was legally required by judgment of a court.

Thus, a widow, widower or child was required to be *actually dependent* upon the deceased worker in order to be entitled to *any* benefits; but he/she was *presumed* to be *wholly dependent,* thus entitled to maximum benefits, if the conditions of KRS 342.075(1)(a), (b) or (c), as applicable, were satisfied. KRS 342.075 then provided, as it does now, that "[i]n all other cases" the relation of dependency in whole or in part shall be determined in accordance with the facts existing at the time of the accident, but that no person shall be considered a dependent in any degree unless that person was living in the household of the deceased worker at the time of the accident, *or* unless the person was the father, mother, husband, or wife, father-in-law or mother-in-law, grandfather or grandmother, child or grandchild, or brother or sister of the whole or half blood. Thus, even a widow, widower or child who did not fall within a KRS 342.075(1) presumption was still entitled to

death benefits if he/she could prove actual dependency.[7]

The Workers' Compensation Act underwent a major revision during the 1972 session of the General Assembly. That revision included the repeal of KRS 342.070[8] and the enactment of KRS 342.750[9] (death benefits if the employee's death was work-related) and KRS 342.730(4)[now (3) ],[10] (death benefits if the employee was drawing or entitled to compensation and death was not work-related).

With respect to surviving spouses and children, KRS 342.750(1) provides as follows:

(a) If there is a widow or widower and no children of the deceased, to such widow or widower 50 percent of the average weekly wage of the deceased, during widowhood or widowerhood.

(b) To the widow or widower, if there is a child or children living with the widow or widower, 45 percent of the average weekly wage of the deceased, or 40 percent, if such child is not or such children are not living with a widow or widower, and in addition thereto, 15 percent for each child. Where there are more than two (2) such children, the indemnity benefits payable on account of such children shall be divided among such children, share and share alike.

(c) Two (2) years' indemnity benefits in one (1) lump sum shall be payable to a widow or widower upon remarriage.

(d) To the children, if there is no widow or widower, 50 percent of such wage for one (1) child, and 15 percent for each additional child, divided among such children, share and share alike.

(e) The income benefits payable on account of any child under this section

---

7. A 1980 amendment added the language "and is actually dependent" to KRS 342.075(3). 1980 Ky. Acts ch. 104 § 2. The amendment appears redundant; regardless, for reasons discussed *infra,* it has no application to widows, widowers or children under the present statutory scheme.

8. 1972 Ky. Acts ch. 78 § 36, eff. January 1, 1973.

9. 1972 Ky. Acts ch. 78 § 16, eff. January 1, 1973.

10. 1972 Ky. Acts ch. 78 § 14, eff. January 1, 1973.

shall cease when he dies, marries, or reaches the age of eighteen (18), or when a child over such age ceases to be physically or mentally incapable of self-support, or if *actually dependent* ceases to be actually dependent, or, if enrolled as a full-time student in any accredited educational institution, ceases to be so enrolled or reaches the age of 22. A child who originally qualified as a *dependent* by virtue of being less than 18 years of age may, upon reaching age 18, continue to qualify if he satisfies the tests of being physically or mentally incapable of self-support, *actual dependency,* or enrollment in an educational institution. (Emphasis added.)

KRS 342.750(1) then provides benefits for the deceased employee's parents, grandparents, grandchildren, brothers and sisters (though no in-laws as apparently anticipated in KRS 342.075), but only if *actually dependent.*

KRS 342.730(3) provides benefits to widows, widowers and children as follows:

(a) To the widow or widower, if there is no child under the age of eighteen (18) or incapable of self-support, benefits at fifty percent (50%) of the rate specified in the award; or

(b) If there are both such a widow or widower and such a child or children, to such widow or widower, forty-five percent (45%) of the benefits specified in the award, or forty percent (40%) of such benefits if such a child or children are not living with the widow or widower; and, in addition thereto, fifteen percent (15%) of the benefits specified in the award to each child. Where there are more than two (2) such children, the indemnity benefits payable on account of two (2) children shall be divided among all the children, share and share alike; or

(c) If there is no such widow or widower but such a child or children, then to such child or children, fifty percent (50%) of the benefits specified in the award to one (1) child, and fifteen per-

cent (15%) of such benefits to a second child, to be shared equally. If there are more than two (2) such children, the indemnity benefits payable on account of two (2) children shall be divided equally among all the children; ...

....

(e) To the widow or widower upon remarriage, up to two (2) years, benefits as specified in the award and proportioned under paragraphs (a) or (b) of this subsection, if such proportioned benefits remain unpaid, to be paid in a lump sum.

Subsection (d) of the statute provides that if there is no widow, widower, or child, benefits are payable to the parent or parents, but only if such person(s) are "wholly or partly actually dependent for support upon the decedent."

■ Three things are apparent from the language of KRS 342.750(1) and KRS 342.730(3):(1) With respect to widows, widowers and children, the statutory schemes are virtually identical, except that the benefits are greater if the employee's death was work-related; (2) whereas KRS 342.070 had required a widow, widower or child to be actually dependent in order to be entitled to death benefits, the present statutes contain no such requirement; and (3) whereas KRS 342.075(1)(b) presumes that a child is wholly dependent only up to age sixteen, a child is entitled to benefits under KRS 342.750 and KRS 342.730(3) up to age eighteen regardless of dependency. The requirement of dependency with respect to death benefits under KRS 342.750 now applies only to parents, grandparents, grandchildren, siblings of the deceased, and children over eighteen who are not full-time students or who are incapable of self-support.

■ Thus, KRS 342.075(1), which is a definition statute, *i.e.,* it defines who is a dependent, not a benefits statute, *i.e.,* one which identifies those entitled to benefits, has no application to an award made pur-

suant to a statute which does not require dependency as a condition precedent to entitlement to benefits. The 1974 enactment of "An Act Relating to Equal Rights for Men and Women,"[11] by which the General Assembly amended numerous statutes, including KRS 342.075,[12] in order to eliminate perceived statutory gender inequities is immaterial to this issue. The amendment of KRS 342.075 merely placed surviving spouses on equal footing with respect to the presumption of dependency regardless of gender. The amendment could not have affected benefits payable to a widower under KRS 342.750, which does not require dependency. Nor did the 1980 amendment of KRS 342.075(3),[13] which added the language "and is actually dependent" affect a widower's entitlement to benefits under KRS 342.750.

The Court of Appeals felt obligated in this case to follow our decision in *White v. Stewarts Dry Goods Co.*, Ky., 531 S.W.2d 504 (1975), which indeed held that the requirement of dependency in KRS 342.075 still applied to a widower's claim for benefits under KRS 342.750. SCR 1.030(8)(a). However, *White* is inconsistent with our later opinion in *Palmore v. Jones*, Ky., 774 S.W.2d 434 (1989), which held that the dependency determinations in KRS 342.075 had no application to a non-dependent widow's claim for benefits under KRS 342.730(3). The language of KRS 342.075(1) does not purport to apply only to survivors of a worker whose death was caused by the compensable injury or disease; thus, the statute would apply as well (if at all) to survivors of a worker whose death resulted from another cause. If *Palmore v. Jones* applies to death benefits payable under KRS 342.730(3), then it applies as well to death benefits payable under the virtually identical language of KRS 342.750. Moreover, since the statutory scheme provides greater benefits to survivors under KRS 342.750 when death is work-related than under KRS 342.730(3) when it is not, it would be illogical to

conclude that the legislature intended to make it more difficult for survivors to obtain benefits under KRS 342.750 than under KRS 342.730(3).

We believe our decision in *White v. Stewarts Dry Goods Co., supra*, misconstrued the intent of the legislature in repealing KRS 342.070 and enacting KRS 342.750 and KRS 342.730(4)[now (3) ]. We now hold with respect to death benefits for widows, widowers and children that the provisions of KRS 342.075 were superseded by the enactment of the latter two statutes. Accordingly, we overrule *White v. Stewarts Dry Goods Co.*, reaffirm *Palmore v. Jones, supra*, and hold that the reasoning expressed in *Palmore* applies as well to KRS 342.750 as to KRS 342.730(3).

## II.  15% PENALTY.

■ The decedent was employed as a switchperson on a railway line within the employer's facility. Her duties involved moving along the railway line with the train and throwing the switches necessary to route the train to its destination. At the time of the accident, she was riding on a personnel ladder attached to the side of the first of three rail cars which were being pushed by an engine on the main railway line. Another car, which had been designated to be scrapped or repaired because its sides were bowed out approximately two feet, was parked on an adjoining spur line near the pinch point where it joined the main line. When the car on which the decedent was riding passed the pinch point, the clearance between the train and the damaged car was only five inches. As a result, the decedent was caught between the two cars and crushed to death.

Although there are no specific statutes or regulations pertaining to in-plant railways, the minutes of a January 1997 safety meeting indicated that the employer was aware that there were a number of cars with bowed sides which needed to be

---

11.  1974 Ky. Acts ch. 386.

12.  1974 Ky. Acts ch. 386 § 60.

13.  1980 Ky. Acts ch. 104 § 2.

scrapped or repaired, apparently because they were scraping against and damaging the building and doors in the plant. There was also evidence that although workers were not supposed to jump on and off moving trains or ride on the lead car, it was common practice for them to do so without correction or punishment. There was also evidence that new employees normally are given three to four hours of training by the human resources department and that the decedent received additional on-the-job training by a more experienced worker, including instructions not to ride on the railway cars, particularly the front end of a car which was being pushed.

An inspector from the Kentucky Labor Cabinet investigated the accident and issued a citation charging the employer with a violation of KRS 338.031(1)(a), the "general duty" provision of the Kentucky Occupational Safety and Health Act (KOSHA), *viz:*

(1) Each employer:

    (a) Shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.

The violation was classified as "serious." The citation recited that transportation employees were not trained in "common railway safety procedures" and listed several specific examples, including the failure to instruct workers "in the recognition and avoidance of unsafe conditions in their work environment." The proposed penalty was $5,000.00. The employer contested the citation and a settlement was ultimately reached with the Labor Cabinet by which the employer was to abate all items in the original citation, the penalty was reduced to $1,000.00, and $4,000.00 would be spent for safety training for employees operating the in-plant railway. The agreement did not contain an admission by the employer of any violation of KOSHA or any safety standards.

KRS 342.165(1) provides in pertinent part that:

If an accident is caused in any degree by the intentional failure of the employer to comply with any specific statute or lawful administrative regulation made thereunder, communicated to the employer and relative to installation or maintenance of safety appliances or methods, the compensation for which the employer would otherwise have been liable under this chapter shall be increased fifteen percent (15%) in the amount of each payment. . . .

In *Apex Mining v. Blankenship*, Ky., 918 S.W.2d 225 (1996), a 15% penalty was imposed on the basis of an intentional violation of KRS 338.031(1)(a). There, the injured worker was required to operate a grossly defective piece of heavy equipment which was without brakes, with a decelerator which did not work properly, with the throttle fastened in the wide open position, and which had caused prior accidents but had not been repaired. The ALJ found that the employer had intentionally created a patently obvious safety hazard and that such conduct was sufficient to trigger KRS 342.165 despite the fact that KRS 338.031(1)(a) was the only safety law which had been violated. We agreed, explaining that although the "general duty" statute was not as specific as might be desired, the hazard created by requiring a worker to operate such a grossly defective piece of equipment was patently obvious to a layperson, even in the absence of a specific statute or regulation addressing the matter.

In reversing the imposition of the 15% penalty in this case, a divided Court of Appeals panel relied instead on our decision in *Cabinet for Workforce Dev. v. Cummins*, Ky., 950 S.W.2d 834 (1997). In *Cummins*, as here, there was no statute or regulation specifically pertinent to the worker's injury and a penalty was sought for a purported violation of KRS 338.031(1)(a). In *Cummins*, however, the ALJ found that the evidence introduced by the worker did not warrant imposition of the 15% penalty and we held on appeal that the evidence did not compel such a

**520**

finding. That, of course, is the standard of review on appeal from a factual finding against an appellant in a workers' compensation case. *Paramount Foods, Inc. v. Burkhardt,* Ky., 695 S.W.2d 418 (1985); *Commercial Drywall v. Wells,* Ky.App., 860 S.W.2d 299 (1993). Here, the ALJ found that the evidence proved a violation of KRS 338.031(1)(a) sufficient to warrant imposition of the 15% penalty. That finding was supported by evidence that (1) an obvious hazard was created by the presence of railroad cars with bowed sides; (2) complaints about such cars had been raised at a safety meeting a month before the accident; and (3) workers routinely rode railway cars, including the lead car, without punishment. An ALJ's award which is supported by substantial evidence will not be set aside on appeal. *Hush v. Abrams,* Ky., 584 S.W.2d 48 (1979); *Addington Resources, Inc. v. Perkins,* Ky. App., 947 S.W.2d 421 (1997). Although the evidence in this case was not as egregious as in *Apex Mining v. Blankenship, supra,* it was substantial and sufficient to support the ALJ's award of a 15% penalty. The fact that the employer settled the KOSHA citation without admitting a violation is immaterial. In the context of a workers' compensation claim, it is the responsibility of the ALJ to determine whether a violation of a statute or administrative regulation has occurred.

Accordingly, the decision of the Court of Appeals is reversed, the decision of the Workers' Compensation Board is reinstated, and this case is remanded to the ALJ with directions to enter a new, recalculated award in accordance with the contents of this opinion.

LAMBERT, C.J.; GRAVES, JOHNSTONE, KELLER and STUMBO, JJ., concur.

WINTERSHEIMER, J., concurs in result only without separate opinion.