**HAWKEYE CONSTRUCTION COMPANY, Appellant,**

v.

**Quentin Keith LITTLE, Deceased, by Jayna LITTLE, Administratrix, o/b/o Kristen Little; Hon. Donna Terry, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

**No. 2004–CA–001280–WC.**

Court of Appeals of Kentucky.

Dec. 3, 2004.

Billy R. Shelton, Lexington, KY, for appellant.

Robert J. Greene, Pikeville, KY, for appellee.

Before COMBS, Chief Judge; JOHNSON and MINTON, Judges.

*OPINION*

COMBS, Chief Judge.

Hawkeye Construction Company petitions for review of a decision of the Workers' Compensation Board of May 26, 2004. The Board affirmed the award of an Administrative Law Judge (ALJ) to the appellee, Jayna Little, on behalf of her daughter, Kristen Little. At issue was the work-related death of Kristen's father, Quentin Little. In awarding benefits, the ALJ applied the penalty provided in KRS[1] 342.165, thereby enhancing the award by

---

1. Kentucky Revised Statutes.

30%. Hawkeye argues that the Board erred in agreeing with the ALJ that there was sufficient evidence that Hawkeye had intentionally ignored safety regulations—a finding necessary for the imposition of the 30% penalty. Having reviewed the record, we are persuaded that the Board did not err in its assessment of the evidence. *See, Western Baptist Hospital v. Kelly,* Ky., 827 S.W.2d 685, 687–88 (1992), and *Whittaker v. Rowland,* Ky., 998 S.W.2d 479, 482 (1999). Thus, we affirm.

Hawkeye is a construction contractor engaged in reclamation and other activities related to industrial construction. On August 30, 2002, while operating a truck on an elevated haul road for Hawkeye, Quentin Little was fatally injured when his truck rolled off the road and fell 800 feet down a steep embankment. As reclamation work was being performed, Hawkeye was required by federal regulations to maintain on the outer edge of the roadway a berm of sufficient height to restrain Little's vehicle. *See,* 30 CFR[2] § 77.1605(k) and § 77.2(d). At the time of Little's tragic accident, the berm had been worn away.

Following Little's death, the U.S. Department of Labor, Mine Safety and Health Administration (MSHA) conducted an investigation and determined that the berm in the area where Little's truck left the road was far below the required height. Accordingly, on September 22, 2002, MSHA cited Hawkeye for its violation of the federal safety regulations relating to elevated roads as follows:

> The berm on the outer edge of the elevated haul road near the top of the hollow fill was not sufficient to restrain haulage vehicles operating in the area. The affected portion of the roadway was approximately fifty feet in length. The berm in this area ranged from 0–20" in height and was very narrow in width.

> The axle height of the largest truck using the roadway was approximately 34".

The MSHA report concluded that the faulty condition of the berm had contributed to the accident.

The only contested issue before the ALJ was whether Hawkeye intentionally violated the statute so as to justify the imposition of penalties provided in KRS 342.165, which provides:

> If an accident is caused in any degree by the intentional failure of the employer to comply with any specific statute or lawful administrative regulation made thereunder, communicated to the employer and relative to installation or maintenance of safety appliances or methods, the compensation for which the employer would otherwise have been liable under this chapter shall be increased thirty percent (30%) in the amount of each payment.

In applying the statute and assessing the penalty against Hawkeye, the ALJ considered the report issued by MSHA along with other evidence surrounding the accident. In her findings, the ALJ observed that several employees of Hawkeye testified that on the day of Little's death, "the overall pace of the day was 'rushed'" and that they felt pressured to keep the trucks moving. (ALJ's Opinion, Award and Order of December 3, 2003, p. 4.) The ALJ also found: (1) that there was no evidence of any mechanical problem with Little's truck as a possible alternate explanation of the accident; (2) that Little could not see the ground in front of his truck for twenty to thirty feet—preventing him from seeing the edge of the road; and (3) that Hawkeye continued to operate trucks that day despite its awareness of the inade-

**2.** Code of Federal Regulations.

quate condition of the berm. The ALJ concluded as follows:

> An employer has the duty to provide each worker with a safe place to work. See KRS 338.031(1). Based upon the testimony of record and the interviews and recommendations set forth in the MSHA investigation report, it is found that Hawkeye violated the "safe place to work" statute and also violated MSHA regulations by failing to provide and maintain an adequate berm on the outer edge of the elevated haul road. As noted by Hawkeye, not every accident should result in the imposition of a safety penalty. However, in this case, the Administrative Law Judge finds that the fatal accident was caused *in large part* by Hawkeye's intentional failure to provide an adequate berm. The job foreman, Phillip Rife, testified that while he believed the berm to be sufficient before the shift began, the effect of truck tires and other heavy equipment on that berm diminished it until it was only eight to twelve inches in height. While Hawkeye, to its credit, was attempting to simultaneously widen the haul road and improve the berm, the excavator had not reached the area of the f[atal] accident to improve the berm when Mr. Little's truck crossed it. The berm was simply inadequate in size to restrain the truck or, more importantly, to notify Mr. [Little] of the location of the edge of the elevated roadway. The condition of this berm made it a dangerous proposition for a driver operating a truck in that vicinity and is a clear violation of both KRS 342.338.013(1)[*sic*] and federal safety regulations. Therefore, the insufficient berm constituted an intentional failure to comply with specific safety statutes and regulations, and played a causal role in the fatal accident.

(ALJ's Opinion, pp. 9–10; emphasis added.)

In affirming the ALJ's award of enhanced benefits, the Board concluded as follows:

> The MSHA investigation report and MSHA citation filed of record herein, as well as the depositions of record, constitute evidence sufficient to support a conclusion that Hawkeye knew the haul road berm was inadequate on August 30, 2002, yet continued to operate trucks on that haul road even though the safety risk posed by the inadequate berm had not been fully rectified. Moreover, it may be inferred from those circumstances that Hawkeye's failure to comply with 30 CFR § 77.1605(k) and KRS 338.031(1) was intentional.

(Board's opinion, pp. 8–9.)

In this appeal, Hawkeye contends that the ALJ's decision was not supported by substantial evidence. Hawkeye does not contest the ALJ's finding that it violated both the safety regulations relating to berms and KRS 338.031(1). It cannot show—nor does it argue—that the evidence was inadequate to support the ALJ's finding that the accident was caused "in large part" by the absence of the required berm. Hawkeye's sole challenge to the sufficiency of the evidence is directed to intent; that is, to the ALJ's finding that it intentionally failed to comply with the safety regulations and the duty to provide a safe working environment.

In this case, the record before ALJ Terry was devoid of any evidence indicating that Hawkeye consciously disregarded or willfully ignored safety regulations dealing with berm height.... [After learning that the berm had worn down] Hawkeye's foreman dispatched an excavator to begin work on the haul road to reestablish berm height on the outside edge of the road in question. In fact, at the time of the fatal accident involving

Little, this excavator was only several hundred feet from the area, working its way up to the spot where the fatal accident occurred.... There is nothing in the conduct of Hawkeye and its employees that could be determined to be egregious in nature and rise to the level of willful misconduct.

(Appellant's brief, pp. 4–5.)

After reviewing the record, we agree that substantial evidence supported the ALJ's finding of an intentional violation of a known safety regulation. At the time that the accident occurred, it is undisputed that the berm fell far below the height requirements of the federal safety regulations.

Hawkeye was aware of the safety regulations. It was also aware of the condition of the berm and, to its credit, was attempting to correct it. However, rather than shutting down its operation until the berm was safely repaired, Hawkeye took the risk of continuing to dispatch its employees onto the extremely hazardous road. Moreover, there was evidence that the financial incentive of keeping the trucks running outweighed a prudent consideration of the hazard posed by the inadequate berm. Hawkeye was under a duty to anticipate that Little, who had only been working for the company for a few days, could not see the edge of the road from his position in the truck.

These circumstances collectively support a reasonable inference by the ALJ that Hawkeye knowingly and consciously disregarded Little's safety and thereby intentionally violated KRS 338.031(1)(a) by placing him in a position "likely to cause death or serious physical harm[.]" *See, Apex Mining v. Blankenship,* Ky., 918 S.W.2d 225 (1996); *Lexington–Fayette Urban County Gov. v. Offutt,* Ky.App., 11 S.W.3d 598 (2000); and *Brusman v. Newport Steel Corp.,* Ky., 17 S.W.3d 514 (2000). We conclude that the ALJ had the requisite evidence to determine that Hawkeye's conduct was sufficiently egregious to justify the 30% penalty.

The opinion of the Workers' Compensation Board is affirmed.

ALL CONCUR.