# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

$\mathfrak{Supreme}$ $\mathfrak{Court}$ $\mathfrak{of}$ $\mathfrak{Kentucky}$ FINAL

2014-SC-000166-WC

DATE 3-12-15 Emit Crowell P.C.

ALICIA HOWETH-ENGLAND                                   APPELLANT


ON APPEAL FROM COURT OF APPEALS
V.                  CASE NO. 2013-CA-000933-WC
WORKERS' COMPENSATION NO. 10-78249


KENTUCKY DEPARTMENT OF
CORRECTIONS; RAFAEL PRIETO, M.D.;
HONORABLE ALISON E. JONES,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                             APPELLEES


**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

Appellant, Alicia Howeth-England, appeals from a Court of Appeals

opinion which affirmed a decision of the Workers' Compensation Board that

denied her enhanced benefits due to a safety violation. Howeth-England

argues that she is entitled to the safety violation penalty enhancement because

her employer failed to alert her to the existence of or fix a metal plate located

on the floor which caused her to fall. For the below stated reasons, we affirm

the Court of Appeals.

Howeth-England was employed by the Kentucky Department of

Corrections ("DOC") as a corrections officer at the Western Kentucky

Correctional Complex ("WKCC"). On August 29, 2010, while walking through a prison dormitory, she stubbed her toe on a metal plate in the floor, causing her to fall and injure her back. As a result of her fall, Howeth-England has undergone two lumbar hemilaminotomy surgeries at L5-S1. She has not returned to work. Howeth-England claims she is physically unable to return to employment as a corrections officer and that she cannot work full time due to back pain and spasms in her lower back and left leg. She filed for workers' compensation.

As a part of the claim, James Purdy, a safety specialist at WKCC, testified. He stated that the metal plate, which Howeth-England tripped on, was a part of a dormitory which was constructed more than twenty years ago. The plate rose approximately three-eighths of an inch above the floor and was a brown color approximately a shade darker than the floor. Since the accident, the plate has been painted yellow and its edges ground down. Purdy was unaware of any prior injuries caused by the plate or any documented complaints about it.

Howeth-England also testified and stated that the area where the plate was located was "kind of dark." She was unaware the plate existed until she fell. She believed the metal plate was approximately twenty inches by twenty inches.

After reviewing the evidence, the Administrative Law Judge ("ALJ") issued an opinion, order, and award granting Howeth-England temporary total disability benefits and partial permanent disability ("PPD") benefits based on a

twenty percent whole person impairment rating. The ALJ also found the metal plate constituted a safety violation pursuant to KRS 338.031 and awarded Howeth-England a thirty percent increase in her PPD benefits pursuant to KRS 342.165(1).

DOC filed a petition for reconsideration[1] requesting additional findings of fact on the alleged safety violation and arguing that the safety violation penalty should not be applied. The ALJ affirmed her previous opinion but did amend it to include the following additional findings:

> [DOC] relies on the fact that no one had previously complained about or been injured by the plate in the floor. The ALJ finds that this fact is not sufficient to avoid liability for a safety violation penalty. An employer should not be able to avoid taking corrective measure to ensure the safety of its employees until one of its employees sustains an injury. Moreover, the ALJ does not believe that an employer should be permitted to remain "willfully blind" to obvious hazards that its employees might encounter in the workplace.
> While certain hazards might not be easily ascertainable, and therefore, not sufficient to give rise to a finding of an intentional violation, the ALJ found that this case presented the type of safety violation that even a layperson could easily recognize. In other words, it is common sense that an unmarked, raised plate in a dim walkway poses a tripping hazard.

The DOC appealed the ALJ's decision to apply the safety violation penalty to the Board. The Board agreed with the DOC that the safety violation penalty should not apply and reversed the ALJ. In so doing, the Board stated:

> Here, the record indicates [DOC] could not have known the metal plate posed any kind of a safety hazard before August 29, 2010. To permit the factual scenario in the case *sub judice* to justify a safety penalty would broaden the application of the statute to

---

[1] Howeth-England also filed a petition for reconsideration which is not pertinent to this appeal.

3

include factual situations not contemplated by the Supreme Court and the legislature.

Howeth-England appealed to the Court of Appeals arguing that the Board erred as a matter of law by substituting its own judgment for that of the ALJ's as to the weight of evidence on a question of fact. The Court of Appeals affirmed, and this appeal followed.

As an initial matter, we note that the ALJ has sole discretion to evaluate the weight of the evidence presented. *Whittaker v. Rowland*, 998 S.W.2d 479, 481 (Ky. 1999). On appeal, the Board's review is limited to determining whether the evidence is sufficient to support the findings of the ALJ, or if the evidence compels a different result. *Western Baptist Hospital v. Kelly*, 827 S.W.2d 685, 687 (Ky. 1992). The Court of Appeals is only required to reverse the Board "if it overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id.* at 687-688.

The first question which must be answered in this appeal is whether the DOC violated the "general duties" provision of Kentucky's Occupation Safety and Health Act, KRS 338.031(1). Then we must determine whether that violation entitles Howeth-England to the enhanced safety violation benefits pursuant to KRS 342.165(1).

## I. THE DOC VIOLATED KRS 338.031(1)

KRS 338.031(1), Kentucky's general duties statute, states that, "Each employer: (a) Shall furnish to each of his employees employment and a place of

4

employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees; (b) Shall comply with occupational safety and health standards promulgated under this chapter." A violation of KRS 338.031 occurs when the four-part test outlined in *Lexington-Fayette Urban County Government v. Offutt*, 11 S.W.3d 598, 599 (Ky. App. 2000), is satisfied. That test states that an employer is deemed to have violated KRS 338.031 when:

> (1) [a] condition or activity in the workplace presented a hazard to employees; (2) [t]he cited employer or employer's industry recognized the hazard; (3) [t]he hazard was likely to cause death or serious physical harm; and (4) [a] feasible means existed to eliminate or materially reduce the hazard.

*Id.* at 599 (*quoting Nelson Tree Services, Inc. v. Occupational Safety and Health Review Commission*, 60 F.3d 1207, 1209 (6th Cir. 1995)).

Performing the *Offutt* test indicates that the DOC violated KRS 338.031(1). First, the raised metal plate upon which Howeth-England tripped presented a hazard to DOC employees. Not only did the metal plate rise almost three-eighths of an inch above the floor, but it was also a color which was only a shade different from the tile color and was located in an area of the dormitory that was dimly lit. Second, a metal plate or any item which constitutes a tripping risk for employees is a hazard which is, or should be, generally recognized by employers. Third, the metal plate was a hazard which, while not likely to cause death, can cause serious physical harm to anyone who trips over it. This is evidenced by the serious injuries Howeth-England has suffered in this matter. Finally, a feasible means existed to remedy the hazard that the

5

metal plate represented. The DOC ground down the edges of the metal plate and painted it yellow after Howeth-England's accident indicating that a means existed to reduce the risk of tripping. Thus, the metal plate which Howeth-England tripped over at WKCC satisfies the *Offutt* test, and accordingly constituted a violation of KRS 338.031(1). However, as shown by the next section, a finding that the DOC committed a violation of the "general duties" provision of Kentucky's Occupation Safety and Health Act does not automatically entitle Howeth-England to the safety violation enhancement.

## II. THE DOC DID NOT INTENTIONALLY VIOLATE THE GENERAL DUTIES STATUTE

A violation of KRS 338.031(1) can satisfy the requirement in KRS 342.165 that a "specific statute" be intentionally ignored. However, not every violation of KRS 338.031(1) is egregious enough to justify granting a safety violation enhancement. Before the safety violation enhancement is applied it must be shown that the employer "intentionally disregarded a safety hazard that even a lay person would obviously recognize as likely to cause death or serious physical harm." *Hornback v. Hardin Memorial Hospital,* 411 S.W.3d 220, 226 (Ky. 2013).

Several cases have held that a violation of KRS 338.031(1) entitles a claimant to receive the safety violation enhancement. In *Apex Mining v. Blankenship,* 918 S.W.2d 225 (Ky. 1996), an employee was injured in an accident caused by the defective condition of a road grader he was operating. The safety violation enhancement was applied because "[t]here was substantial

6

evidence that the employer was aware of the defective condition of the grader, and it is apparent, even to the lay person, that a piece of heavy equipment without breaks, with a decelerator that is not in the proper condition, and with a throttle which is fastened in the wide open position creates a safety hazard." *Id.* at 229.

The safety penalty also was applied for a violation of KRS 338.031(1) in *Brusman v. Newport Steel Corp.*, 17 S.W.3d 514 (Ky. 2000), when an employee was crushed to death while riding on the side of a railroad car. The accident occurred because there existed a "pinch point" between the car the employee was riding and an adjoining railcar which had walls that bowed out approximately two feet. The safety violation penalty was justified because, "(1) an obvious hazard was created by the presence of railroad cars with bowed sides; (2) complaints about such cars had been raised at a safety meeting a month before the accident; and (3) workers routinely rode railway cars, including the lead car without punishment." *Id.* at 520. Finally in *Hornback*, 411 S.W.3d at 227, where an employee was seriously injured by falling down an elevator shaft due to a failed rescue attempt, the safety violation penalty was applied because the employer, in attempting the rescue, did not "take any prophylactic measures [to] prevent Hornback from suffering her ultimate fate of falling into the open elevator shaft." Key to this holding was a finding that the employer was made aware of the dangers of a poorly performed elevator rescue and intentionally disregarded them.

7

Comparing the facts of the present matter to prior case law, we cannot find that the DOC committed an intentional violation of the general duties statute. In the above cited cases, the employer was aware of the dangers which ultimately caused the employee's severe injuries or death. However, the employer in all of those cases decided to either disregard general safety protocols or ignore obviously dangerous issues. In contrast, Purdy, the safety specialist at WKCC, testified that the DOC was unaware of any prior injuries caused by the plate during the dormitory's twenty year history or any documented complaints about it by any employee. Based on this, and the fact that uneven floors such as this are not a blatantly dangerous condition, the DOC's failure to recognize that the plate could be a tripping hazard is not egregious enough to find that an intentional violation of the general duties statute occurred. Thus, Howeth-England is not entitled to enhanced benefits for a safety violation.

For the above stated reasons we affirm the decision of the Court of Appeals.

Minton, C.J.; Abramson, Cunningham, Keller, Noble, and Venters, JJ., sitting. All concur.

8

COUNSEL FOR APPELLANT,
ALICIA HOWETH-ENGLAND:

Rickie A. Johnson
Rodger Wayne Lofton


COUNSEL FOR APPELLEE,
KENTUCKY DEPARTMENT OF CORRECTIONS:

Kenneth Lance Lucas
Sarah C. Rogers


COUNSEL FOR APPELLEE,
RAFAEL PRIETO, M.D.:

Rafael L. Prieto, M.D., *pro se*