# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

2014-SC-000739-WC

EMPLOYMENT SOLUTIONS, INC.                                      APPELLANT

V.
ON APPEAL FROM COURT OF APPEALS
CASE NO. 2014-CA-000170-WC
WORKERS' COMPENSATION BOARD NO. 11-WC-83831

CHARLES BREEZE, ET. AL.                                          APPELLEES

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

In this workers' compensation case, Appellant, Employment Solutions,

Inc. ("Employment Solutions"), contends that the impairment rating upon

which the ALJ relied does not constitute substantial evidence, because it is not

in conformity with the *Guides to Evaluation of Permanent Impairment,* Fifth

Edition ("AMA *Guides*"); further, that the ALJ's assessment of a 30% increase in

compensation for violation of KRS 342.165(1)[1] is not supported by substantial

---

[1] The statute provides in relevant part:
> If an accident is caused in any degree by the intentional
> failure of the employer to comply with any specific statute
> or lawful administrative regulation made thereunder,
> communicated to the employer and relative to installation
> or maintenance of safety appliances or methods, the
> compensation for which the employer would otherwise have
> been liable under this chapter shall be increased thirty
> percent (30%) in the amount of each payment.

evidence. The Workers' Compensation Board ("Board") found no error in the ALJ's reliance upon the subject impairment rating. The Board vacated and remanded with respect to the safety violation, because the basis for the ALJ's decision was unclear. The Court of Appeals affirmed. Finding no error, we affirm.

## I. BACKGROUND

On June 21, 2011, Appellee, Charles Breeze ("Breeze"), was employed by Employment Solutions as a co-instructor in the building trades program. He was injured while showing a student how to make cuts in a board with a table saw. On the last cut, a knot or warp in the board caused it to kick. The board hit Breeze in the stomach and his hand went on top of the blade. Breeze sustained injuries to his third, fourth and fifth fingers. He underwent surgery, was off work until September 17, 2011, and returned to his regular job. Subsequently, Breeze was promoted to lead instructor.

On November 5, 2012, Breeze filed an Application for Resolution of Injury Claim/Form 101, claiming a violation of KRS 342.165(1). Breeze alleged that the "[b]lade guard wasn't working properly, had been reported several times."

In his February 18, 2013, deposition, Breeze testified that the guard was working properly. But, he thought the saw was old and needed to be replaced. Breeze testified that he had mentioned it to the lead instructor, Brad Ison, numerous times, to the effect of "Hey, Brad, this saw's kind of old. I think we might check into replacing it."

2

On April 30, 2013, Rick Christman, CEO of Employment Solutions, testified by deposition. Employment Solutions, a non-profit, helps people with barriers to employment become self-sufficient. According to Christman, Brad Ison was never reticent to spend money on new equipment. Before Breeze's injury, nothing had been brought to Christman's attention that there were any issues with the subject saw. Christman testified that it was about seven years old, had been purchased new and was not used frequently. He explained that they had replaced the table saw, "not because there was anything wrong with it, but we replaced it with a table saw that was much more sophisticated, something that will – that would prevent any injury."

At the May 3, 2013 hearing, Breeze testified that he noticed "numerous things that was wrong with [the saw] immediately. The saw guard would get stuck. It wouldn't come down sometimes when you'd run a board through."

Dr. Robert Johnson assessed a 23% impairment rating under the AMA *Guides*, which included 12% for loss of strength. Dr. Prince assessed 12%, AMA *Guides*. By addendum report, Dr. Prince explained that the major difference in their ratings was Dr. Johnson's use of strength as an additional factor. Citing the AMA *Guides*, Dr. Prince noted that "[s]trength can be an appropriate method for evaluation 'in a rare case, if the examiner believes the individual's loss of strength represents an impairing factor that has not been considered adequately by other methods in the *Guides*.'" Further, that "'impairment due to loss of strength *could be combined* with the other

3

impairments, *only* if based on unrelated etiologic or pathomechanical causes."' (alteration in original). Dr. Prince felt that his 12% rating was an appropriate estimate of the impact of Breeze's hand injuries on his overall activities of daily living.

By Opinion rendered July 3, 2013, the ALJ awarded permanent partial disability benefits based upon Dr. Johnson's 23% rating, noting that it included the "strength factor." The ALJ also awarded a 30% increase in compensation for violation of KRS 342.165(1):

> The final issue ... is whether or not [Breeze] is entitled to a penalty enhancement pursuant to KRS 342.165... The ALJ has not been directed to any violation of a specific rule or regulation and ... knows of none. However, the ALJ must further consider whether or not a violation has occurred under the "general duties" requirements of KRS 338.031(1)(a). Under the general duties statute, an employer "shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees."

> Mr. Breeze had complained to his supervisor on previous occasions that the table saw on which he was injured was unsafe and needed to be replaced. His complaints were either ignored or considered but rejected. Mr. Christman testified that he was unaware of any problems or defects in the saw. He testified that money was available for replacement of the saw and he assumed that Mr. Ison, the immediate supervisor, would have purchased a new saw if he had found merit in [Breeze's] complaints. Subsequent to Mr. Breeze's injury, the saw was replaced with a new model that contained a device that causes the saw to stop or shut down if moisture activates a sensor. Obviously, the new saw is a later model and contains a safety device not contained on the saw used by Mr.

4

Breeze at the time in question. However, the saw was only 7 years old, according to Mr. Christman and had not been over-used. The ALJ is faced with the decision of whether or not the availability of a newer and safer model table saw is tantamount to an unsafe or hazardous environment or place of employment... [T]he question is whether or not the employer's failure to purchase a newer and safer model, in and of itself, constitutes a violation of KRS 338.031, and thus, a violation of KRS 342.165....

In his deposition, [Breeze] acknowledged that the table saw ... did contain a guard and that it was in place and functioning at the time of his injury.... However, he further testified that the machine was "very old" and that he had mentioned to Brad Ison that the saw needed to be replaced. Mr. Breeze testified that in words or in substance he made a statement such as, "Hey, Brad, this saw's kind of old. I think we might check into replacing it."

In ... *Lexington-Fayette Urban County Government v. Offutt*, 11 S.W.3d 598 (Ky. App. 2000), the court adopted a four-pronged test that was first enunciated in *Nelson Tree Services, Inc. v. Occupational Safety & Health Review Commission*, 60 F.3d 1207 (6th Cir. 1995). The test for violation of the general duty clause is as follows:

(1) A condition or activity in the work place presented a hazard to employees;

(2) The cited employer or employer's industry recognized the hazard;

(3) The hazard was likely to cause death or serious physical harm; and

(4) A feasible means existed to eliminate or materially reduce the hazard.

In the case at hand, the use of table saws in close proximity with the body parts of employees is an obvious hazard. The fact that guards and other safety

5

devices are utilized on machines such as table saws is recognition by the employer's industry of the hazard presented. The hazard was likely to cause death or serious physical harm. Finally, a feasible means existed to eliminate or materially reduce the hazard. A newer and safer model table saw was available on the market. Considering ... [that Employment Solutions] is a training facility for students, and further considering that [Breeze] had warned his supervisor that a safer machine should be made available to the employees, as well as the instructor, the ALJ finds that violation of the statute has occurred and that [Breeze] is entitled to an enhancement of 30% of the benefits awarded to him. [Employment Solutions] failed to furnish [Breeze] with a place of employment free from recognized hazards that were likely to and did cause serious physical harm to Mr. Breeze.

On July 12, 2013, Employment Solutions filed a Petition for Reconsideration, which the ALJ denied by order of August 2, 2013. Employment Solutions appealed to the Board.

On January 3, 2014, the Board rendered an Opinion affirming in part, vacating in part and remanding. The Board found no error in the ALJ's reliance upon Dr. Johnson's impairment rating.

> Dr. Johnson was not cross-examined regarding his ... impairment rating. Although Dr. Prince ... did not include the loss of grip strength in his assessment of impairment, he outlined instances when the inclusion of such loss may be appropriate. He stopped short of stating Dr. Johnson's assessment of impairment may be inappropriate. Dr. Prince's assessment of impairment is merely contrary evidence upon which the ALJ could have relied. Here, Dr. Johnson's report constitutes substantial evidence ....

6

The Board vacated the ALJ's assessment of a 30% increase in compensation for violation of KRS 342.165(1), because the basis for the ALJ's decision was unclear.

> The burden is on the claimant to demonstrate an employer's intentional violation of a safety statute or regulations. *See Cabinet for Workforce Development v. Cummins*, 950 S.W.2d 834 (Ky. 1997).
>
> Application of the safety penalty requires two elements... First, the record must contain evidence of a violation of a specific safety provision, whether state or federal. Second, evidence of "intent" to violate a specific safety provision must also be present.
>
> Violation of the "general duty clause" set out in KRS 338.031(1)(a) may be grounds for assessment of a penalty in the absence of a specific regulation or statute....
>
> Because Breeze's testimony is equivocal, it is necessary for the ALJ to identify what evidence he relied upon in making his determination. Breeze's primary complaint is newer technology with advanced safety features existed on the market at the time of the accident. No evidence was produced as to whether the equipment lacked any safety features violative of any established safety rule or regulation. At his deposition, Breeze testified the guard was functioning properly, although at the hearing held two months later, he testified it did not. Because the testimony relied upon by the ALJ in reaching his conclusion is inconsistent, it is necessary for him to identify the portions of Breeze's testimony he relied upon in making his determination. It is unclear whether the ALJ believed Employment Solutions' failure to purchase a safer saw or its failure to repair the saw after receiving repeated warnings from Breeze was the basis for the imposition of the safety penalty.
>
> [T]he parties are entitled to findings sufficient to inform them of the basis for the ALJ's decision to allow

7

for meaningful review. *Kentland Elkhorn Coal Corp. v. Yates*, 743 S.W.2d 47 (Ky. App. 1988); *Shields v. Pittsburgh and Midway Coal Mining Co.*, 634 S.W.2d 440 (Ky. App. 1982).

The Board remanded for "entry of an amended opinion, award and order consistent with the views set forth herein."

Employment Solutions appealed to the Court of Appeals, which affirmed by Opinion rendered November 21, 2014. On December 16, 2014, Employment Solutions filed a Notice of Appeal to this Court.

## II. ANALYSIS

Employment Solutions contends that Dr. Johnson's impairment rating does not constitute substantial evidence, because he misapplied the AMA *Guides* by including loss of strength. "[T]he proper interpretation of the *Guides* and the proper assessment of an impairment rating are medical questions." *Kentucky River Enterprises, Inc. v. Elkins*, 107 S.W.3d 206, 210 (Ky. 2003). "[E]xcept under compelling circumstances where it is obvious even to a lay person that a gross misapplication of the AMA *Guides* has occurred, the issue of which physician's AMA rating is most credible is a matter of discretion for the ALJ." *Cent. Baptist Hosp. v. Hayes*, No. 2012-SC-000752-WC, 2013 WL 4623489, at *2 (Ky. Aug. 29, 2013) (quoting the Board).

Employment Solutions draws our attention to *Watkins v. Kobe Aluminum USA, Inc.*, No. 2013-SC-000334-WC, 2014 WL 4160212 (Ky. Aug. 21, 2014). *Watkins* is distinguishable on its facts. There, the ALJ relied upon Dr. Looney's combined 20% rating based upon arthritis and gait derangement. Under the

8

AMA *Guides*, an impairment based on gait derangement requires routine use of a cane, crutch, or long leg brace. In *Watkins*, there was no evidence that the claimant had ever used or required such a device. The Board vacated the award and remanded for additional findings. The Court of Appeals affirmed. This Court affirmed and explained that "on remand, we are not requiring the ALJ to perform a medical analysis, but only to address the issue raised and determine whether there is support in the record for a 20% impairment rating for gait impairment per the AMA *Guides*." *Id.* at *3.

We agree with the Board and the Court of Appeals that Dr. Prince's opinion was merely contrary evidence. As was his prerogative, the ALJ found Dr. Johnson's opinion more credible.

> The [Board] is entitled to the same deference for its appellate decisions as we intend when we exercise discretionary review of Kentucky Court of Appeals decisions in cases that originate in circuit court... The function of further review in our Court is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude.

*W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

Employment Solutions also contends that the ALJ's assessment of an increase in compensation for violation KRS 342.165(1) is not supported by substantial evidence.

> KRS 342.165(1) requires proof that an "intentional" violation of a specific safety statute or regulation caused the accident in which the worker's injury occurred. Thus, an award under KRS 342.165(1) must

9

be based on substantial evidence that a violation occurred and was intentional...

KRS 342.165(1) does not require evidence that an employer deliberately set out to violate a safety provision or engaged in egregious or malicious conduct. ALJs may presume that employers know the requirements of statutes and regulations concerning workplace safety that have existed long enough to create a presumption of knowledge. Intent is a question of fact for an ALJ to determine. It may be inferred reasonably from an employer's knowing violation of a specific safety provision. KRS 342.165(1) authorizes an increase in compensation if the intentional violation "in any degree" caused the accident in which a worker was injured.

KRS 338.031(1)(a), commonly known as KOSHA's "general duty" provision, requires every employer to provide a workplace that is "free from recognized hazards that are causing or are likely to cause death or serious physical harm." The words "recognized hazards" are not specific and may be construed broadly to include hazards that safety experts recognize but that workers and employers may not. Thus, the mere fact that a general duty violation occurs will not support an inference that the violation is intentional for the purposes of KRS 342.165(1).

*Omico Plastics v. Sparkle Acton*, No. 2008-SC-000344-WC, 2009 WL 427386, at *3 (Ky. Feb. 19, 2009) (footnote omitted). "In order for a violation of the general-duty provision [KRS 338.031(1)(a)] to warrant enhancement under KRS 342.165(1), the employer must be found to have intentionally disregarded a safety hazard that even a lay person would obviously recognize as likely to cause death or serious physical harm." *Hornback v. Hardin Mem'l Hosp.*, 411 S.W.3d 220, 226 (Ky. 2013).

10

In the present case, the Board vacated the "ALJ's decision to impose a 30% safety penalty pursuant to KRS 342.165" because the basis for it was unclear. We agree. "[W]here the trial court fails to fully articulate its decisional basis, appellate courts are prevented from discharging their duty of meaningful appellate review." *Carpenter v. Schlomann*, 336 S.W.3d 129, 132 (Ky. Ct. App. 2011).

Accordingly, we affirm the decision of the Court of Appeals.

All sitting. All concur.


COUNSEL FOR APPELLANT:

John G. Irvin, Jr.
Kinkead & Stilz, PLLC

COUNSEL FOR APPELLEE:

McKinnley Morgan, Esq.
Morgan, Collins & Yeast