GIBBS AUTOMATIC MOULDING COM-
PANY et al., Appellants,

v.

Glenda Faye BULLOCK, Appellee.

Court of Appeals of Kentucky.

March 21, 1969.

Clarence McCarroll, Woodward, Bartlett & McCarroll, Owensboro, for appellants.

L. B. Lawton, Henderson, for appellee.

MONTGOMERY, Chief Justice.

Gibbs Automatic Moulding Company, the employer, appeals from a judgment finding Glenda Faye Bullock totally and permanently disabled. She had appealed from an award by the Workmen's Compensation Board of 35%. permanent partial disability. The Company also questions the imposition of the penalty under KRS 342.165.

Appellee was nineteen years old, with two years of high school, divorced, and living in Henderson with her two young children. On or about December 1, 1965, she became employed by the Company in Henderson to operate a small punch press with either one or two safety levers. She had previously worked as a waitress. Within three weeks she was transferred to a larger press, stamping out plastic forms. This press had two safety levers so arranged that both hands of the operator were required to operate them in order to prevent a hand from being caught in the press when it came down. However, it was

possible on this machine to anchor one of these levers so that one hand could be free. Occasionally there would be longer pieces of plastic or "long shots" which had to be supported with one hand because of their length. The standard procedure, however, was the stamping of "short shots" with both levers operating. There was a sign on the machine: DO NOT TIE THE HANDLE DOWN.

When appellee came to work on this machine, the right lever was tied down. The evidence is conflicting as to whether she knew this was an improper procedure or that she saw the sign, but it is undisputed that anyone could tell if a lever was tied. On December 21, 1965, while she was operating the press with the lever tied and stamping "short shots," the press came down on her right hand, injuring several fingers.

Dr. C. C. Kissinger attended appellee. Two fingers had been amputated and a third one had been cut badly. These were the index, middle, and ring fingers. He removed the third finger and also a portion of the bone of the hand. She later required a skin graft "patch" from her forearm to the hand. Appellee returned to work in a different capacity and worked one week full time and three weeks part time before there was a layoff.

Dr. Kissinger furnished the only medical testimony. He estimated a 68% disability of the hand and a 37% disability to the body as a whole. Appellee introduced various witnesses who testified to the effect that she was not employable as a punch press operator at which she was working when injured, as an injection press operator, or as a waitress, or in the clothing manufacturing or hosiery industries in the community in which she lived, Henderson.

KRS 342.165, in part, provides:

"If an accident is caused in any degree by the intentional failure of the employer to comply with any specific statute or lawful regulation made thereunder, com-

municated to such employer and relative to installation or maintenance of safety appliances or methods, the compensation for which the employer would otherwise have been liable under this act shall be increased fifteen percent in the amount of each payment."

There is a similar provision covering the "intentional failure of the employee."

Appellee claims that the lever was tied down in violation of Kentucky Department of Labor Regulation 13.4, adopted pursuant to KRS 338.040. According to appellee's brief, the regulation became effective December 11, 1965, about ten days before the injury. Appellee argues that the Company had constructive notice of the regulation and thus was liable for the 15% penalty under KRS 342.165.

The basis of the statutory penalty is that the injury is the result of an intentional failure to comply with a regulation which has been communicated to the employer. There was no showing that the employer had actual knowledge of the regulation. In order to have an intentional failure to comply, there must be actual knowledge, or such period of time must have elapsed as would create a presumption of knowledge. The ten days between the effective date and injury are not enough in the absence of actual knowledge. The Board found that "the evidence does not suggest an intentional violation by the employer," and it is now concluded that this finding is properly supported. 58 Am.Jur., Workmen's Compensation, Section 54, page 613, and Section 303, page 791. See Hoffman v. Department of Industrial Relations, 209 Cal. 383, 287 P. 974, 68 A.L.R. 294. Cf. Fryman v. Electric Steam Radiator Corporation, Ky., 277 S.W.2d 25.

The Board also concluded that appellee had failed to establish that she came within the rule in E. & L. Transport Company v. Hayes, Ky., 341 S.W.2d 240, and Leep v. Kentucky State Police, Ky., 366 S.W.2d 729, apparently because appellee had no

special skills and had not been employed in an occupation long enough to establish an occupational classification. The Board concluded that the functional disability found by Dr. Kissinger was translatable into a 35% occupational, permanent partial disability.

The record has been examined, and it is concluded that the Board was incorrect in holding the rule in E. & L. Transport and Leep inapplicable and was in error in failing to award more than 35% disability. It is concluded that the evidence of employment and employability sustains the trial court's judgment awarding 100% disability under the E. & L. Transport and Leep rule. No question was presented with reference to KRS 342.105. This case arose prior to Osborne v. Johnson, Ky., 432 S.W. 2d 800.

Judgment affirmed as to 100% award and reversed as to 15% penalty.

All concur.