RENDERED: MARCH 5, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1377-WC

D.W. WILBURN, INC.　　　　　　　　　　　　　　　　　APPELLANT


PETITION FOR REVIEW OF A DECISION
v.　　　　　　　OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-17-01063


WADE MASSENGILL;
DAVIS BROTHERS ROOFING;
UNINSURED EMPLOYERS' FUND;
and HON. MONICA RICE-SMITH,
ADMINISTRATIVE LAW JUDGE　　　　　　　　　　　APPELLEES


AND NO. 2020-CA-1499-WX


WADE MASSENGILL　　　　　　　　　　　CROSS-APPELLANT


CROSS-PETITION FOR REVIEW OF A DECISION
v.　　　　　　　OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-17-01063

D.W. WILBURN, INC.;
DAVIS BROTHERS ROOFING;
UNINSURED EMPLOYERS' FUND;
and HON. MONICA RICE-SMITH,
ADMINISTRATIVE LAW JUDGE                    CROSS-APPELLEES


OPINION
AFFIRMING

** ** ** ** **


BEFORE:  DIXON, KRAMER, AND LAMBERT, JUDGES.

KRAMER, JUDGE:  An administrative law judge ("ALJ") entered an order

denying Wade Massengill's claims for an enhancement of his workers'

compensation benefits pursuant to KRS[1] 342.165 against both his employer –

Davis Brothers Roofing ("Davis Brothers") – and his alleged "up-the-ladder"

employer, D.W. Wilburn, Inc. ("Wilburn").  Subsequently, the Workers'

Compensation Board ("Board") vacated and remanded after determining the ALJ's

factfinding and legal analysis insufficiently addressed Massengill's claims.

In Appeal No. 2020-CA-1377-WC, Wilburn contends the Board's

decision was erroneous for two reasons.  First, Wilburn contends the Board

directed the ALJ to resolve an issue Massengill never raised (*i.e.*, whether a KRS

342.165 enhancement to Massengill's award could have been predicated upon a

---

[1] Kentucky Revised Statute.

-2-

violation, by Davis Brothers and Wilburn, of the "general duty" standard of workplace safety set forth in KRS 338.031(1)(a)). Second, Wilburn contends that the ALJ's order was adequate and that no additional factfinding or legal analysis is necessary. In addition, Wilburn asks this Court to "reinstate" the ALJ's decision and determine that it was supported by substantial evidence. Upon review, we affirm the Board's decision to vacate and remand.

In Appeal No. 2020-CA-1499-WX, Massengill, like Wilburn, asks this Court to review the merits of the ALJ's decision – specifically, to determine whether the evidence compelled a judgment of enhanced benefits in his favor. Upon review, we affirm.

Furthermore, Davis Brothers – in its dual roles as appellee and cross-appellee – also asserts the Board erred and for the reasons asserted by Wilburn.

With that said, before addressing the substance of this matter, there are several procedural issues that must be discussed first – beginning with Davis Brothers' fundamental misunderstanding of its roles as *appellee* and *cross-appellee*. If Davis Brothers wished to contest, modify, or otherwise enlarge its rights affected by the Board's decision, it was required to file a valid cross-appeal. *See*, *e.g.*, *Farmers Nat'l Bank of Danville v. Moore*, 282 Ky. 502, 139 S.W.2d 420, 422 (1940); *Lainhart v. Rural Doxol Gas Co.*, 376 S.W.2d 681, 682 (Ky. 1964);

-3-

CR[2] 76.25(9). But, it did not. And in the absence of a cross-appeal, an appellee is only entitled to argue that the lower tribunal reached the *correct* result for the reasons expressed in its judgment or for any other reasons that were appropriately brought to the lower tribunal's attention. *Carrico v. City of Owensboro*, 511 S.W.2d 677, 679 (Ky. 1974). Consequently, any contentions of error from Davis Brothers are unauthorized and will be disregarded.

Equally concerning are Wilburn's and Massengill's requests for this Court to review the merits of the ALJ's order (*i.e.*, whether substantial evidence either supported the ALJ's order or compelled a contrary result). We have no authority to do so under the circumstances. Our appellate authority is limited to reviewing decisions of the Board. *See* KRS 342.290. Here, the Board vacated and remanded—meaning that it rendered no decision regarding the merits of the ALJ's order. *See Hampton v. Flav-O-Rich Dairies*, 489 S.W.3d 230, 234 (Ky. 2016) (quoting *Vacate*, BLACK'S LAW DICTIONARY (10th ed. 2014)) ("[W]hen the Board vacates an ALJ's opinion, it 'nullif[ies] or cancel[s]; make[s] void; invalidate[s]' that opinion."). In the absence of any such decision, it is not our prerogative to review the merits. Rather, as our Supreme Court explained,

> In the event the Court of Appeals agrees with the Board that the ALJ's opinion is deficient, it is free to affirm the Board's opinion. However, in the event that the Court of Appeals disagrees with the Board regarding the

---

[2] Kentucky Rule of Civil Procedure.

sufficiency of the ALJ's opinion, it must remand to the Board for consideration of the substantive issues raised by [the parties] before the Board.

*Id*. at 235.

Thus, we cannot entertain Wilburn's or Massengill's requests for a determination of whether substantial evidence supported the ALJ's order. Consequently, because the entirety of Massengill's cross-petition asks this Court to review the evidence supporting the ALJ's order – which we lack the statutory authority to do in the absence of prior review from the Board – we must affirm in that respect.

Finally, we note that in violation of CR 76.25(4)(a), neither Wilburn nor Massengill specifically designated the Board as an appellee. However, so long as the Board has been served – which occurred here – this is not a jurisdictional error. *See Belsito v. U-Haul Co. of Kentucky*, 313 S.W.3d 549 (Ky. 2010).

With those preliminary matters now resolved, we proceed to the substance of this matter. The Board's opinion accurately sets forth the relevant facts and procedural history, which we incorporate in relevant part as follows:

> Massengill filed a Form 101 alleging he injured multiple body parts on June 15, 2015, when the boom lift he was working on tipped over. He and his co-worker, Brandon Cloud ("Cloud"), fell approximately forty feet. The fall caused fatal injuries to Cloud and serious injuries to Massengill. Massengill identified Davis Brothers and Wilburn as Defendants. He noted Wilburn was the general contractor who had employed Davis Brothers.

Massengill indicated Davis Brothers is located in Tennessee, while Wilburn is located in Kentucky. The accident occurred in Frankfort, Kentucky. The Uninsured Employers' Fund ("UEF") was joined as a party since Davis Brothers did not have a Kentucky workers' compensation policy in effect on June 15, 2015.

. . . .

Since the only issue on appeal [before the Board] regards the application of KRS 342.165(1), we will not summarize the medical evidence. We note Massengill timely filed a Form SVC alleging the following safety rules, regulations or statutes had been violated by the employer: "KRS 338.031(1)(a); 29 CFR[3] 1926.451(c)(2)(iv) employer did not utilize proper equipment; 29 CFR 1926.602(d)." Massengill alleged the "employer did not provide a safe work environment as they did not properly train their employees or utilize the appropriate equipment with the boom lift occupied by Plaintiff causing it to tip over and causing the Plaintiff serious injuries."

Massengill filed the report, citations, and notification of penalty issued by the Kentucky Labor Cabinet, Occupational Safety and Health Program ("KOSH"). The report identified the establishment as Davis Brothers. It noted Wilburn was the general contractor for the Boone National Guard Center Construction Project, and it had hired Davis Brothers to perform roofing and siding work. On the day of the accident, Davis Brothers employees were using a rough terrain forklift ("RT forklift") with a platform attached to the forks to install exterior insulation on a wall. The report indicates Wilburn rented the RT forklift and owned the platform. Donald Carr ("Carr"), foreman for Davis Brothers, operated the RT forklift, while Massengill and Cloud

---

[3] Code of Federal Regulations.

-6-

were on the platform when the accident occurred.  The report indicated the following events occurred *verbatim*:

> . . . the employees on the platform motioned to the operator that they were ready to come down.  The operator, [Carr], then got into the cab, turned on the machine, and tilted the machine's frame (body) to the left, away from the work area.  When this tilt occurred it also tilted the 40 foot boom and 4x16 ft. platform to the left away from the work area. . . .  When this frame tilt occurred the operator stated that he lost handle of the lever that conducted the tilt and the frame continued to tilt to the left away from the building tipping the machine completely over.  This machine has this frame tilt feature for rough terrain and for unlevel surfaces.  When the frame was tilted to the left, while on flat level ground, the weight of the 40 ft. extended boom and the basket started to turn the machine completely over onto its left side slamming onto the concrete. This exposed two employees to a fall of 40+ feet to the concrete ground below killing one employee and hospitalizing the other.

The report noted the RT forklift operator's manual, which was located inside the cab of the forklift, refers to AMSE/ANSI B56.6 1992 safety standards when lifting personnel.  Those standards require platforms to be no wider than the overall width of the truck, in this instance 4x10 feet.  The platform involved in the accident, owned and supplied by Wilburn, was 4x16 feet.  The report noted Terry Gregory ("Gregory"), Wilburn's site superintendent, stated he received verbal assurance from Carr that he could operate the RT forklift.  Davis Brothers could not provide the RT forklift training certification for Carr.  Davis Brothers forwarded a copy

of a training card dated June 19, 2015, after the accident. The report noted the operator's manual stated as follows:

> Excessive tilting of the fork carriage or other attachments with an elevated load can cause instability. . . . Only trained and authorized persons should operate and service the machine . . . . Always level the machine before raising the boom. Never tilt frame with the boom raised. Machine may tip and cause serious personal injury and death . . . . LULL strongly recommends that you DO NOT use the rough terrain forklift as a personnel lift. It is designed for material handling only. If personnel MUST be lifted, lift only in accordance with ASME/ANSI B56.6 1992, Para. 5.15 and with properly designed work platform.

The report recommended issuing citations to both Davis Brothers and Wilburn. It also recommended issuing a citation to Wilburn as the controlling and creating employer. The report noted Wilburn was the general contractor that had sub-contracted the work to Davis Brothers. It noted Wilburn checked the quality of the work throughout the project, controlled the work being done, and conducted the clean up after the accident. Wilburn also owned and supplied the platform and rented the RT forklift involved in the accident.

A citation was issued, containing three items of violation. The first item stated the employer violated KRS 338.031(1)(a), a serious violation, and proposed a $3,500.00 penalty. The citation stated as follows:

> KRS 338.031(1)(a): the employer did not furnish to each of his employees employment and a place of employment which was free from recognized hazards that

could cause or are likely to cause death or serious physical harm.

a. On 6/15/15 the exposing employer, [Davis Brothers], did not furnish to each of his employees, employment free from recognized hazards when a 4x16 foot (Arrow brand) man basket attachment was used on a rough terrain forklift to lift personnel up approximately forty (40) ft. This resulted in the machine tipping over killing one (1) employee and seriously injuring another employee.

* A feasible means of abatement is, but is not limited to, using a 48"x116" man basket attachment which complies with AMSE/ANSI B56.6 1992 8.25.1(b).

The second item stated the employer violated 29 CFR 1926.451(c)(2)(iv), a serious violation, and proposed a $3,500.00 penalty. The citation stated as follows:

29 CFR 1926,451(c)(2)(iv): Front-end loaders and similar pieces of equipment were used to support scaffold platforms without being specifically designed by the manufacturer for such use.

a. On 6/15/15 as the exposing employer, [Davis Brothers], used a rough terrain forklift to support a man platform when the machine was not specifically designed to do so.

The third item stated the employer violated 29 CFR 1926.602(d), a serious violation, and proposed a $3,500.00 penalty. The citation stated as follows:

29 CFR 1926.602(d):  The employer did not certify that each operator had been trained and evaluated as required by 1910.178(1) of this chapter:

a.  On 6/15/15 as the exposing employer, [Davis Brothers] did not certify that the operator of the rough terrain forklift had been trained and evaluated as required by 29 CFR 1910.178(1).

Wilburn filed the January 3, 2018 KOSH Review Commission "Decision and Order of this Review Commission."  According to the decision, Wilburn was cited for a serious violation of 29 CFR 1926.602(d) since it, as the controlling employer, did not assure that Davis Brothers had certified the operator of the RT forklift had been trained and evaluated as required by 29 CFR 1910.178(1).  Ultimately, the Review Commission downgraded the violation and declined to assess any penalty for that infraction.  We note the above-referenced citation to Wilburn by KOSH was not filed as evidence.

Wilburn also filed the "in house" safety report by Ron Logsdon ("Logsdon") of JV Resources Safety Management.  The report notes an inspection occurred on June 15, 2015.  It identified the following rule violations by Wilburn:  Documented training had not been performed; First Aid cardholder was not on site; the weekly hazard assessment checklist was not on site; and a safety meeting was not held or documented.

Massengill testified by deposition on September 5, 2017 and at the hearing held on November 26, 2018.  Massengill, a resident of Kingsport, Tennessee, began working for Davis Brothers in 2004.  He testified Wilburn hired Davis Brothers to install siding on the wall of a building at the National Guard Armory in Frankfort, Kentucky.

On June 15, 2015, Massengill and Cloud were working on a man platform attached to a RT forklift that raised them up to hang insulation on a tall exterior wall. They were properly harnessed, and worked at the height of approximately forty feet. They were also wearing PPE and hardhats. Carr, a Davis Brothers Employee and Massengill's supervisor, operated the RT forklift. Massengill and Cloud signaled to Carr that they were ready to come down. Carr tilted the RT forklift away from the building to avoid scratching it "and then it just fell over." Massengill estimated he and Cloud were approximately 30 or 40 feet in the air when the RT forklift tipped over. Cloud suffered fatal injuries while Massengill was airlifted to UK Medical Center with serious injuries. Massengill remained off work until January 2016, when he returned to light duty work for Davis Brothers. Massengill's treating physician released him to regular duty work without restriction in April or May 2016. Massengill continues to work for Davis Brothers as a roofer.

Massengill testified the equipment was already on site when he arrived on June 15, 2015, and the platform was already attached to the RT forklift. Massengill was not part of the decision making regarding equipment setup, and did not know who attached the platform to the RT forklift. Massengill testified Wilburn supplied all of the equipment, including the RT forklift and platform. Other lifts were on site on the day of the accident, but were already in use. Massengill did not know whether Carr received training from Wilburn. He was likewise unaware of Carr's previous training, but had observed him operating forklifts in the past. Massengill does not believe Carr intentionally tried to harm him or cause the RT forklift to tip over. Massengill believes the platform was too big for the RT forklift, causing it to lose balance as Carr tilted it away from the building.

Gregory testified by deposition on June 4, 2018. Gregory has worked for Wilburn for thirty-two years, and was the

project superintendent at all relevant times. As project superintendent, he coordinates and schedules work and is responsible for "just general overview of safety and project flow." Gregory testified he is generally responsible for safety, but "not in specifics." Wilburn is a general contractor that constructs buildings and associated infrastructure.

Wilburn was hired to construct a helicopter maintenance facility for the Kentucky Army National Guard in Frankfort, Kentucky in 2013 or 2014. Wilburn had previously hired a contractor to install metal wall panel systems. However, that contractor abandoned the job prior to its completion. Wilburn then hired Davis Brothers to complete the job. Wilburn agreed to supply the equipment and Davis Brothers agreed to supply the labor to complete the job. Gregory testified Wilburn supplied the RT forklift, man platform, a man platform lift, an aerial platform lift, and an all-terrain platform lift to Davis Brothers. Gregory was on site, but did not witness the accident.

Gregory instructed subcontractors on what jobs were required, and provided a timeframe for completion. He did not instruct subcontractors on how to perform their specific job duties. Gregory testified Davis Brothers told him what equipment it needed. Gregory did not direct Davis Brothers to use specific equipment. Gregory visited the site throughout the day to ensure the work was progressing.

In the first couple of weeks on the job, Davis Brothers used a snorkel lift or an aerial platform to perform work at heights. Davis Brothers then requested the RT forklift and the man platform involved in the accident, which Wilburn rented from Equipment Sales and Rental. Wilburn also provided the man platform, which it owned. A Wilburn employee selected the man platform from its warehouse, and delivered it to the jobsite for Davis

Brothers to use. Carr advised he was certified to operate the RT forklift, and Gregory did not provide any training.

Carr and Gregory discussed the use of the man platform on the RT forklift prior to the accident. They discussed who would operate the lift, and to ensure appropriate usage of tie-offs. Gregory stated he did not direct or instruct Davis Brothers how or when to use the man platform. Gregory stated he gave only one instruction as it relates to the man platform. He stated, "one requirement that I know of on that man basket is that the employees have to be tied off in it and it has to be tied to the mast (of the forklift), and they were adhering to that." Gregory stated no one from Davis Brothers raised any concern over the platform, and no one refused to use it.

A "notice" sticker from the RT forklift was attached as an exhibit. It read in part, "This machine is not equipped to lift personnel. Never use this machine as a work platform." The "Operators and Safety manual" for the RT forklift was also attached as an exhibit. Gregory testified that although he is familiar with the RT forklift, he is not familiar with the manual. Gregory stated he is aware that the RT forklift needs to be operated by a trained and authorized person. Gregory confirmed he received a verbal assurance from Carr that he was certified to operate the forklift, but "I didn't follow up and ask him for a training certificate, no."

Gregory testified he was not aware of the regulation requiring the man platform to be no wider than the overall width of the truck, in this instance 4x10. He testified as follows regarding the safety of the man platform:

> Q: But you would agree that based on what the operator's manual says, it wasn't appropriate for this machine.

A: According to this operator's manual and, I guess, OSHA's statement, no, it wasn't appropriate.

Q: And you all made no effort prior to bringing that basket to the job site to determine whether it was appropriate or not.

A: No, we did not compare – I did not compare the basket to the machine. I assume that that basket, being a fabricated basket, the type that you'd buy or rent, that it was adequate.

Gregory emphasized that Wilburn had appealed the citations issued by KOSH, and that it did not pay any penalties.

Gregory testified Wilburn hired JV Resources to perform on-site walk-throughs once or twice a month to identify safety violations. Logsdon of JV Resources had been at the job site the morning of the accident and did not report any safety violations. Gregory did not know whether Logsdon had observed Carr operating the RT forklift with personnel in the man platform. Logsdon returned to the jobsite subsequent to the accident to conduct an investigation.

Carr testified by deposition on April 27, 2018. Wilburn also filed Carr's January 6, 2017 deposition from the companion claim of Brandon Cloud v. Davis Brothers, Claim # 2016-000978. Carr worked for Davis Brothers as the job superintendent/project manager at the time of the June 15, 2015 accident. Carr has operated RT or off road forklifts a few hundred times in his forty-year construction career. Carr received on-the-job and formal training in the operation of forklifts prior to the accident. Carr received a license to operate off road forklifts in 2000. He testified that the license does not expire. Neither Davis Brothers nor Wilburn provided on-site

-14-

training to operate the RT forklift involved in the accident. Carr stated he was certified to operate the RT forklift on June 15, 2015, and he had previously operated such equipment. In the deposition taken in the companion claim, Carr testified he is unable to provide a training certificate demonstrating he was certified to operate the RT forklift prior to June 15, 2015, explaining he had lost his wallet containing all of his cards and certifications. He also stated that the employer that trained him was no longer in business.

Wilburn subcontracted with Davis Brothers to complete work on the building that had been abandoned by a prior subcontractor. Carr stated Gregory, the job site superintendent for Wilburn, instructed and directed what needed to be done. Wilburn provided Davis Brothers with equipment, including the RT forklift and man platform. At the January 2017 deposition, Carr indicated the RT forklift was already on site when Davis Brothers was hired. Davis Brothers had been at the jobsite for approximately three weeks prior to the accident. On June 15, 2015, Davis Brothers was installing exterior wall panels using the RT forklift, operated by Carr. He lifted Massengill and Cloud in the man platform to install the panels. Carr testified as follows regarding how the accident happened: "I went and moved the forks with the man bucket in it, and we went to move them away from the wall to lower the guys down to the ground, and the lift just bounced, slid back and forth, whether it was wind or whatever, and it over weighted the machine and flipped the machine over." Carr stated as follows regarding the man platform:

> Q: And just to be clear, who instructed you to lift the – lift Mr. Cloud and Mr. Massengill up with the basket?
>
> A: That's what the equipment they give us to work, operate with.

-15-

Q: Did anybody give you direction to lift Mr. Massengill and Mr. Cloud up using that man basket?

A: Yeah. The superintendent on the job site.

Q: The superintendent that was a D.W. Wilburn employee?

A: Correct.

Q: Do you believe you violated any safety rule or regulation on June the 15th, 2015?

A: No.

Q: Did you intentionally cause harm to anyone that day?

A: No.

. . . .

A: I asked Terry to bring me a man basket, and that's what was delivered to me for doing that.

Q: You're saying that D.W. Wilburn – you asked for a basket that was appropriate for that machine, but D.W. Wilburn brought that basket?

A: Correct.

Q: Are you aware based on your training that an oversized basket can cause the machine to come off balance and make it easier to tip over?

-16-

A:  Yes.

Carr explained that although he was trained to utilize a personnel carrier authorized by the equipment manufacturer, the sizing of the basket was never part of his safety training.  He believed the platform Wilburn provided was safe and the appropriate size.  He also stated he operated the RT forklift safely.  Carr stated he looked at the operator's manual before operating the RT forklift, but did not measure the platform before using it to lift personnel.  Carr was aware the operator's manual strongly recommended the RT forklift not be used as a personnel lift, but testified that all other on-site lifts designed to lift personnel were already in use on June 15, 2015.  Carr was aware that the operator's manual instructs the operator not to tilt the machine with the boom raised.  Assuming the operator's manual instructs the platform is not to exceed 4x10 and he was using a man platform measuring 4x16, Carr agreed the platform was oversized.  However, Carr did not agree with the KOSH report as to what caused the RT forklift to tip over.  He noted a third party safety company had been present earlier in the day and it did not write up Davis Brothers for any safety violations.

The ALJ rendered an opinion May 13, 2019, finding Massengill entitled to income and medical benefits for which "the Defendants" are liable.  The ALJ also determined Massengill failed to prove KRS 342.165(1) is applicable.  Massengill filed a Petition for Reconsideration requesting multiple additional findings of fact addressing whether Davis Brothers and Wilburn violated a number of safety regulations.  The ALJ overruled this petition on June 12, 2019.  Massengill appealed.

In an opinion dated December 20, 2019, this Board determined the May 2019 opinion and June 2019 order were not final and appealable.  The Board noted the ALJ failed to determined whether Davis Brothers bore the

-17-

initial liability for the award of income and medical benefits, whether Wilburn is an up-the-ladder contractor bearing the responsibility for income and medical benefits if not paid by Davis Brothers, and UEF liability. The Board concluded the May 2019 opinion and June 2019 order were interlocutory, dismissed Massengill's appeal, and remanded to the ALJ.

In the March 11, 2020 remand opinion, the ALJ determined Massengill is entitled to PPD benefits based upon the 29% impairment rating. The ALJ stated as follows, *verbatim*, regarding KRS 342.165:

> . . . .
>
> The purpose of KRS 342.165 is to reduce the frequency of industrial accidents by penalizing those who intentionally fail to comply with known safety regulations. Application of KRS 342.165 does not automatically flow from a showing of a violation of a specific safety regulation followed by a compensable injury. *Burton v. Foster Wheeler Corp.*, 72 S.W.3d 925 (KY 2002). The application of the safety penalty requires proof of two elements. First, the record must contain evidence of the existence of a violation of a specific safety provision, whether state or federal. Second, there must be evidence of "intent" to violate a specific safety provision. Intent to violate a regulation may be inferred from an employer's failure to comply because employers are presumed to know what state and federal regulations require. *Chaney v. Dags Branch Coal Co.*, 244 S.W.3d 95 (KY 2008).
>
> "Intentional failure" must be more than simple negligence. Penalties pursuant to

KRS 342.165(1) are punitive in nature, and require a level of conduct by a party equivalent to malfeasance, rather than misfeasance or nonfeasance. Terry v. AFG Industries, WCB Opinion No. 00-94292 (January 2, 2003). The party must have an immediate cognizance that the conduct causing the injury is in contravention to the policy or regulation. *Barmet of Kentucky* [*, Inc.*] *v. Sallee*, 605 S.W.2d 29 (KY APP 1980).

The ALJ finds Massengill failed to satisfy his burden of proving entitlement to the application of KRS 342.165. The ALJ is not convinced Davis Brothers nor D.W. Wilburn consciously disregarded or willfully failed to comply with any safety regulations or provisions. The evidence does not establish Gregory or Carr knowingly violated any safety regulations.

Carr did not believe he violated any safety rule or regulation on June 15, 2015. Carr had numerous forklift trainings and certifications. He testified the information regarding specific acceptable basket size for personnel was never covered in any of his safety trainings. Carr testified D.W. Wilburn sent him an OSHA approved basket because it had the door and caging. Further, Carr testified the third-party safety person had been to the job site and found no issues with the lift or basket.

Gregory believed he provided a safe basket for the Lull lift. He testified Davis Brothers requested the Lull lift and basket. He explained there is an exception that allows for using the Lull lift for lifting personnel.

-19-

Gregory testified he was not aware of the regulation about the maximum acceptable size of the man basket allowed by the manufacturer. He thought he had provided an appropriate and safe basket for the lift. He testified he assumed it being a fabricated basket that you buy or rent, that it was adequate. He explained D.W. Wilburn had a third-party safety company, JV Resources, inspect the premises on a regular monthly basis. Like Carr, Gregory advised JV Resources found no safety issues with the basket and lift prior to the accident.

Based on the foregoing, the ALJ finds there is no evidence that either Davis Brothers or D.W. Wilburn knowingly or willfully failed to comply with any safety regulations or procedures.

The ALJ next determined Wilburn is an up-the-ladder employer and is liable for Massengill's income and medical benefits stemming from the June 15, 2015 accident. The ALJ awarded TTD benefits, PPD benefits, and medical benefits and found the defendants are entitled to a credit for the benefits received by Massengill from his Tennessee claim.

(Internal footnotes omitted.)

On appeal before the Board, Massengill argued the evidence of record compelled the imposition of the KRS 342.165(1) safety penalty enhancement to his award. In that regard, he emphasized the KOSH citations that were issued to both Davis Brothers and Wilburn. He also pointed to the various sections of the operator's manual, discussed above, that warned against using the RT forklift as a

personnel lift. In that vein, he noted the manual stated the RT forklift was not to be used as a personnel lift unless there was no other practical option and that if it was so used, the personnel platform was required to comply with the design requirements.

Massengill noted KOSH concluded that according to the applicable standard, the largest acceptable platform for the RT forklift was 4x10 feet; that Wilburn supplied a 4x16-foot man platform; and that KOSH had concluded the oversized platform contributed to instability and the risk of tilting. Massengill argued Wilburn selected and supplied the RT forklift and man platform. He noted Gregory admitted, during his deposition testimony, that the 4x16-foot man platform was not appropriate. Massengill also noted that while Gregory stated he had believed the 4x16-foot man platform was safe, Gregory had never ensured or investigated whether his belief was correct prior to the accident.

Massengill also implied Wilburn had been in a hurry to complete the construction job and had rushed Davis Brothers. He also pointed to Carr's testimony and asserted there was a substantial question of fact as to whether Carr had even been certified to operate the RT forklift at the time of the accident. Massengill also noted that although Wilburn had successfully appealed its companion KOSH citation, there was no evidence it had challenged any of KOSH's findings against it underlying those citations.

As indicated, however, Massengill also asserted the ALJ's analysis and factfinding insufficiently disclosed the basis of the ALJ's decision and effectively thwarted intelligent review. Specifically, he argued it flowed from the ALJ's misunderstanding of the applicable standard for determining whether an employer acted "intentionally" for purposes of applying the KRS 342.165(1) benefit enhancement.

And, as indicated, the Board found Massengill's latter point dispositive. The Board explained:

KRS 342.165(1) provides as follows:

> If an accident is caused in any degree by the intentional failure of the employer to comply with any specific statute or lawful administrative regulation made thereunder, communicated to the employer and relative to installation or maintenance of safety appliances or methods, the compensation for which the employer would otherwise have been liable under this chapter shall be increased thirty percent (30%) in the amount of each payment.

The purpose of KRS 342.165 is to reduce the frequency of industrial accidents by penalizing those who intentionally failed to comply with known safety regulations. Apex Mining v. Blankenship, 918 S.W.2d 225 (Ky. 1996). The burden is on the claimant to demonstrate an employer's intentional violation of a safety statute or regulation. Cabinet for Workforce Development v. Cummins, 950 S.W.2d 834 (Ky. 1997). The application of the safety penalty requires proof of two elements. Apex Mining v. Blankenship, supra.

-22-

First, the record must contain evidence of the existence of a violation of a specific safety provision, whether state or federal. Secondly, evidence of "intent" to violate a specific safety provision must also be present. Enhanced benefits do not automatically flow from a showing of a violation of a specific safety regulation followed by a compensable injury. Burton v. Foster Wheeler Corp., 72 S.W.3d 925 (Ky. 2002). The worker has the burden to demonstrate the employer intentionally failed to comply with a specific statute or lawful regulation. Intent to violate a regulation can be inferred from an employer's failure to comply with a specific statute or regulation because employers are presumed to know what state and federal regulations require. The Kentucky Supreme Court in Chaney v. Dags Branch Coal Co., 244 S.W.3d at 101 (Ky. 2008), stated as follows:

> Absent unusual circumstances such as those found in *Gibbs Automatic Moulding Co. v. Bullock*, 438 S.W.2d 793 (Ky. 1969), an employer is presumed to know what specific state and federal statutes and regulations concerning workplace safety require. Thus, its intent is inferred from the failure to comply with a specific statute or regulation. If the violation "in any degree" causes a work-related accident, KRS 342.165(1) applies. *AIG/AIU Insurance Co. v. South Akers Mining Co., LLC*, 192 S.W.3d 687 (Ky. 2006), explains that KRS 342.165(1) is not penal in nature, although the party that pays more or receives less may well view it as such. Instead, KRS 342.165(1) gives employers and workers a financial incentive to follow safety rules without thwarting the purposes of the Act by removing them from its coverage. It serves to compensate the party that receives more or pays less for being subjected to the effects of the

-23-

opponent's "intentional failure" to comply
with a safety statute or regulation.

Violation of the "general duty" clause set out in KRS 338.031(1)(a) may well constitute grounds for assessment of a safety penalty in the absence of a specific regulation or statute addressing the matter. Apex Mining v. Blankenship, supra; Brusman v. Newport Steel Corp., 17 S.W.3d 514 (Ky. 2000). KRS 338.031(1)(a) requires the employer "to furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or likely to cause death or serious physical harm" to employees. The Kentucky Court of Appeals in Lexington-Fayette Urban County Government v. Offutt, 11 S.W.3d 598 (Ky. App. 2000), applied a four-part test to determine whether a violation of KRS 338.031 had occurred. This test established a violation of a general duty clause occurs when "(1) [a] condition or activity in the workplace presented a hazard to employees; (2) [t]he cited employer or employer's industry recognized the hazard; (3) [t]he hazard was likely to cause death or serious physical harm; and (4) [a] feasible means existed to eliminate or materially reduce the hazard." Id. at 599.

A violation of the "general duty" clause set out in KRS 338.031(1)(a) can satisfy the requirement set out in KRS 342.165 that a "specific statute" was intentionally ignored. Not all violations of KRS 338.031(1)(a) automatically rise to a violation egregious enough to justify granting an enhancement under KRS 342.165. Cabinet for Workforce Development v. Cummins, 950 S.W.2d at 836. *See* Apex Mining v. Blankenship, supra. In order for a violation of the general-duty provision to warrant enhancement pursuant to KRS 342.165(1), the employer must be found to have intentionally disregarded a safety hazard that even a lay person would obviously recognize as likely to cause death or serious physical harm. Hornback v. Hardin Memorial Hospital, 411 S.W.3d 220, 226 (Ky. 2013).

-24-

The ALJ must provide a sufficient basis to support his or her determination. Cornett v. Corbin Materials, Inc., 807 S.W.2d 56 (Ky. 1991). Parties are entitled to findings sufficient to inform them of the basis for the ALJ's decision to allow for meaningful review. Kentland Elkhorn Coal Corp. v. Yates, 743 S.W.2d 47 (Ky. App. 1988); Shields v. Pittsburgh and Midway Coal Mining Co., [634 S.W.2d 440 (Ky. App. 1982)]. This Board is cognizant of the fact an ALJ is not required to engage in a detailed discussion of the facts or set forth the minute details of his or her reasoning in reaching a particular result. The only requirement is the decision must adequately set forth the basic facts upon which the ultimate conclusion was drawn so the parties are reasonably apprised of the basis of the decision. Big Sandy Community Action Program v. Chaffins, 502 S.W.2d 526 (Ky. 1973).

We determine the ALJ did not provide a sufficient analysis addressing the applicability of KRS 342.165(1). We first note the ALJ did not specify which alleged safety violations she considered in her analysis. Likewise, the Board is unable to determine whether the ALJ considered the KOSH report and citation, as well as the operator's manual, in making her determination. Massengill alleged both specific safety regulations, consisting of 29 CFR 1926.451(c)(2)(iv) and 29 CFR 1926.602(d), as well as the general duty clause contained in KRS 338.031(1)(a) in his Form SVC, which is consistent with the KOSH citations. Massengill additionally relied upon several provisions contained in the operator's manual and the notice document attached to the RT forklift. Since Massengill raised violations of specific safety provisions and the general duty provision, the ALJ was required to perform analyses pursuant to Chaney v. Dags Branch Coal Co., supra, and Lexington-Fayette Urban County Government v. Offutt, supra. Therefore, on remand, the ALJ is directed to specify which safety rule or regulation she is considering in her KRS 342.165(1) analysis, and to perform a complete

-25-

analysis pursuant to <u>Chaney v. Dags Branch Coal Co.</u>, <u>supra</u>, and <u>Lexington-Fayette Urban County Government v. Offutt</u>, <u>supra</u>, considering all of the evidence of record. If the ALJ determines Davis Brothers intentionally violated a specific safety statute or regulation, the ALJ is further directed to address whether the up-the-ladder employer, Wilburn, bears responsibility for the increased award.

These appeals followed the Board's decision. Regarding Wilburn's appeal, the arguments Wilburn properly raised before this Court are, as discussed, twofold. First, Wilburn contends the Board effectively directed the ALJ to resolve an issue Massengill never raised (*i.e.*, whether a KRS 342.165 enhancement to Massengill's award could have been predicated upon a violation, by Davis Brothers and Wilburn, of the "general duty" standard of workplace safety set forth in KRS 338.031(1)(a)). Second, Wilburn contends that the ALJ's order was adequate and that no additional factfinding or legal analysis is necessary.

Wilburn's first argument is specious. To be sure, the ALJ's benefit review conference order of November 13, 2018, merely indicates the issue Massengill raised was a "KRS 342.165 violation . . . plaintiff alleging separate violations against DW Wilburn and Davis Brothers." But as the Board noted, Massengill asserted a violation of KRS 338.031(1)(a) in his Form SVC at the start of this litigation. In virtually all his pleadings during those proceedings, Massengill referenced the KOSH citations discussed above, and the KOSH citations discussed violations of KRS 338.031(1)(a). Most saliently, on page

twelve of his brief before the ALJ – after citing and summarizing the contents of the KOSH citations and after asserting that Wilburn should be held responsible (as his up-the-ladder employer) for any of Davis Brothers' safety violations – Massengill argued:

> [W]hen an operator is cited with specific safety violations, then his knowledge of the applicable laws is presumed and a safety penalty is mandated.  Chaney v. Dags Branch Coal Co., 244 S.W.3d 95 (Ky. 2008).  In addition to the specific OSHA violations, it is clear that Davis Brothers *failed to provide Massengill or Brandon Cloud with a safe workplace as required under KRS 338.031(1)(a)*.

(Emphasis added.)

In other words, Massengill *did* ask the ALJ to address this issue. That much was apparent.

Similarly, we agree with and adopt the Board's assessment that the ALJ's decision was inadequate.  Massengill alleged three specific violations, none of which the ALJ specifically addressed.  Moreover, in her order, the ALJ stated she based her decision regarding KRS 342.165 upon the notion that "there is *no* evidence that either Davis Brothers or D.W. Wilburn knowingly or willfully failed to comply with any safety regulations or procedures."  (Emphasis added.)

Yet as the Board pointed out, *some* evidence of intent did exist, or at least may have.  For example, if either of the specific safety regulations (*i.e.*, 29 CFR 1926.451(c)(2)(iv) and 29 CFR 1926.602(d)) were violated, intent would be

-27-

*presumed* "[a]bsent unusual circumstances such as those found in *Gibbs Automatic Moulding Co. v. Bullock*, 438 S.W.2d 793 (Ky. 1969)[.]" *See Chaney*, 244 S.W.3d at 101. Here, absent any determination from the ALJ regarding whether those regulations *were* violated,[4] it is impossible to review whether that presumption applied or if so, whether it may have been vitiated by the requisite "unusual circumstances."

Likewise, for purposes of determining whether Wilburn and Davis Brothers violated the "general duty" standard of KRS 338.031(1)(a), the ALJ was required to determine whether the employer "intentionally disregarded a safety hazard that even a lay person would obviously recognize as likely to cause death or serious physical harm." *See Hornback*, 411 S.W.3d at 226. As the Board indicated, the RT forklift's operator's manual provided some evidence in that respect, as did the "notice" sticker from the RT forklift which stated "This machine is not equipped to lift personnel. Never use this machine as a work platform."

In *Western Baptist Hospital v. Kelly*, 827 S.W.2d 685 (Ky. 1992), the Kentucky Supreme Court described the role of the Court of Appeals in reviewing decisions of the Board: "The function of further review of the [Board] in the Court of Appeals is to correct the Board only where the [] Court perceives the Board has

---

[4] The fact that the employer settled or otherwise resolved a KOSH citation without admitting a violation is immaterial. In the context of a workers' compensation claim, it is the responsibility of the ALJ to determine whether a violation of a statute or administrative regulation has occurred. *See Brusman v. Newport Steel Corp.*, 17 S.W.3d 514, 520 (Ky. 2000).

overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id.* at 687-88. Here, because the ALJ's opinion is either factually incorrect or legally incorrect, the Board had no alternative but to vacate and remand for further findings and analysis, as it did. Hence, the Board did not err. For the reasons discussed, we AFFIRM with respect to both of these appeals.

ALL CONCUR.

BRIEF FOR APPELLANT/CROSS-APPELLEE D.W. WILBURN:

Douglas A. U'Sellis
Louisville, Kentucky

BRIEF FOR APPELLEE/CROSS-APPELLANT WADE MASSENGILL:

C. Phillip Wheeler, Jr.
Pikeville, Kentucky

BRIEF FOR APPELLEE/CROSS-APPELLEE DAVIS BROTHERS ROOFING:

Kimberly K. van der Heiden
Carlisle, Kentucky